Candice L. Fields (SBN 172174)
CANDICE FIELDS LAW
520 Capitol Mall, Suite 750
Sacramento, California 95814
916-414-8050
cfields@candicefieldslaw.com

Counsel for Online Merchants Guild

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| **ONLINE MERCHANTS GUILD,** | **Case No.:** _____ |
| **Plaintiff,** | **COMPLAINT** |
| **vs.** | |
| **NICOLAS MADUROS, DIRECTOR,** | **42 U.S.C. § 1983** |
| **CALIFORNIA DEPARTMENT OF TAX &** | **INTERNET TAX FREEDOM ACT** |
| **FEE ADMINISTRATION,** | |
| **Defendant.** | |

### Introductory Statement

1.      This is an action to challenge government conduct that is crushing thousands of small business owners. California's Treasurer, Fiona Ma, has publicly criticized the California Department of Tax & Fee Administration's actions as "unlawful, unconstitutional, and impractical," and pleaded with Governor Newsom to stop CDTFA from arbitrarily destroying peoples' livelihoods.[1] But CDTFA continues to exceed its lawful authority—all to preserve an economic subsidy to Amazon and political subsidy to some California politicians. The Online

_____

[1] March 8, 2019 Letter from Treasurer Fiona Ma, CPA, to Governor Gavin Newsom, Exhibit 1.

COMPLAINT - 1

1   Merchants Guild, a trade association for the affected small businesses, brings this action to

2   challenge CDTFA's violations of the rule of law.

3          2.      This case arises from California's massive subsidization of Amazon, which

4   CDTFA laundered through the state sales tax system for years. The basic context is as follows.

5   California requires businesses to collect taxes on retail sales, through a scheme administered by

6   CDTFA. Amazon is such a business—Amazon operates the dominant online store in the United

7   States, with over $280 billion in sales in 2019 alone.[2] But for nearly all of the last decade,

8   Amazon refused to collect California sales taxes on the vast majority of sales in its store. And,

9   because Amazon offered political benefits to CDTFA and its elected overseers, CDTFA wrongly

10  gave Amazon a pass. The result was billions in foregone tax revenue.

11         3.      CDTFA recently began looking to make *someone* pay the missing sales taxes. Not

12  Amazon, but the hundreds of thousands of U.S.-based third-party merchants outside of

13  California who supply Amazon's store. Unlike Amazon, these merchants are small, and have

14  neither economic nor political power in California. Amazon has been feeding CDTFA names of

15  merchants, whom CDTFA has been targeting for supposed tax obligations stretching back to

16  2012—often in amounts that seem fictional and designed to create *in terrorem* negotiating

17  leverage. Further, CDTFA is demanding that non-resident merchants register as tax collection

18  agents for the State. CDTFA has been threatening those who do not give in and pay up with

19  felony convictions, years in jail, and crushing fines. CDTFA continues to discriminate against

20  them in favor of the political and economic "benefits" Amazon offers the state government.

21         4.      CDTFA's conduct is causing marketplace havoc and threatening thousands of

22  small business owners with financial ruin. Amazon did not collect taxes on the Amazon sales at

23  issue, dating back nearly a decade, so the Guild's members do not have tax revenue from those

24  sales. Any payment now would have to come out of the small businesses themselves. The

_____

[2] Daniel Sparks, "Amazon's Record 2019 in 7 Metrics," *The Motley Fool* (February 6, 2020),
https://www.fool.com/investing/2020/02/06/amazons-record-2019-in-7-metrics.aspx.

COMPLAINT - 2

Guild's members generally lack such funds. CDTFA's policy could bankrupt them. CDTFA's conduct is also perversely deterring growth and diversification away from Amazon, in effect locking Guild members into Amazon's ecosystem.

5.      CDTFA's actions are unlawful for a variety of reasons. At the most basic level, the agency does not have the power to impose registration or sales tax requirements on the Guild members in question. CDTFA's position is that because *Amazon* unilaterally decided to store items in *Amazon*'s California warehouses for sale in *Amazon*'s store—after Guild members surrendered custody of those items to *Amazon*—Guild members are subject to personal jurisdiction in California. That is not the law: Guild members did not deliberately affiliate with the state via *Amazon*'s unilateral choices.[3] Accordingly, CDTFA cannot lawfully demand non-resident Guild members register with the state, pay back taxes, and collect taxes prospectively. Further, CDTFA's decision to pursue those small businesses—instead of Amazon—unlawfully discriminates against non-residents and interstate commerce. And that is just the tip of the iceberg.

6.      CDTFA surely knows that its actions exceed the agency's lawful authority. The dispositive constitutional principles have been settled for decades. But the agency is undeterred because of the economic reality that most affected small business owners cannot vindicate their rights in California's byzantine and oppressive system for challenging unlawful assessments. This case is necessary to protect the Guild members' constitutional rights.

**Jurisdiction and Venue**

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under the Constitution and laws of the United states, including the Due Process

---

[3] *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("The unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.") (cleaned up).

Clause, the Commerce Clause, the Equal Protection Clause, the Privileges and Immunities Clause, the Internet Tax Freedom Act, and 42 U.S.C. § 1983.

8.      The Court has personal jurisdiction over defendant Maduros and the agency he leads, CDTFA, which is headquartered in Sacramento, California. The Online Merchants Guild submits to the personal jurisdiction of this Court for purposes of this action.

9.      Venue is proper in the Court's Sacramento Division under 28 U.S.C. § 1391 because defendant Maduros and his agency reside in Sacramento and a "substantial part of the events or omissions giving rise to the claim occurred" within the Sacramento Division.

10.     The Tax Injunction Act does not preclude this Court's exercise of jurisdiction because, *inter alia*, the Guild and its members lacks any meaningful state court remedy and the Guild challenges provisions and conduct outside the scope of the TIA's putative jurisdiction-stripping provisions. Comity is no basis for declining jurisdiction, either.

## Parties and Standing

11.     The Online Merchants Guild is a trade association for online merchants. The Guild's purpose is to advocate for a free and fairly regulated online marketplace, and for the interests of online merchants. The Guild provides a common voice for the diverse group of merchants who supply Amazon's store and other online stores. The Guild's membership, which numbers in the hundreds, is almost entirely comprised of small and micro-businesses that members have built from scratch. Many of the Guild's members are true kitchen-table enterprises. Often, eCommerce provides the Guild's members a means of earning self-sufficiency despite disadvantages and setbacks. The Online Merchants Guild is a resident of Wyoming.

12.     The Online Merchants Guild has standing in its own right because the organization has been forced to divert its resources to address the impacts of the challenged

CDTFA conduct, as set forth in greater detail in the declaration of Paul S. Rafelson, the Guild's Executive Director.[4]

13.     The Online Merchants Guild also has standing on behalf of its members, who are or may be affected by the CDTFA conduct challenged herein. The Guild's members would have standing in their own right because they have been or may be subject to CDTFA's challenged conduct. The interests the Guild seeks to represent are germane to the organization's purpose set forth above. This lawsuit will not necessarily require the participation of the Guild's members as plaintiffs.

14.     Defendant Maduros is the Director of CDTFA, which is the California state agency responsible for collection of sales tax. Defendant Maduros and CDTFA are residents of California. Prior to 2017, the state Board of Equalization implemented the scheme addressed herein. But after a series of scandals and state and federal criminal investigations, those responsibilities were transitioned to the newly-created CDTFA[5]. For simplicity, we generally refer to the agency by its current name.

### Factual Allegations

### Amazon's FBA Program

15.     The Guild's members include hundreds of online merchants who participate in the interstate eCommerce market. For many of the Guild's members, Amazon's store is the dominant, if not exclusive, means by which they participate in interstate eCommerce. Amazon's importance to eCommerce, and small business eCommerce in particular, cannot be overstated.

---

[4] Declaration of Paul S. Rafelson, Exhibit 2.
[5] *See, e.g.*, Patrick McGreevy, "In Massive Shake-Up, Gov. Jerry Brown Breaks Up California's Scandal-Plagued Tax Collection Agency," *L.A. Times* (June 27, 2017), https://www.latimes.com/politics/la-pol-ca-tax-board-overhaul-20170627-story.html (describing how the BOE was "the target of an investigation by the Department of Justice, and its members and employees have been accused by auditors of mismanagement that included putting $350 million in sales taxes in the wrong accounts, and improperly interfering with decisions to open field offices and transfer staff," and how an audit "discovered board members were undermining the executive director and transferring tax collections staff to direct parking and crowd control at conferences that boosted the members' standing in the community").

According to some reports, Amazon has nearly half of the entire eCommerce market in the U.S.[6] Amazon's closest "competitor," the behemoth Walmart, has less than 10% of that market.[7]

16.     This case involves the regulatory environment around Amazon's Fulfilled by Amazon or FBA program. The gist of FBA is that Amazon relies on millions of "third-party merchants" to source goods for Amazon's store. Those merchants identify and source items that Amazon might choose to carry in its store. The merchants convey the goods to Amazon to warehouse and, if purchased in Amazon's store, to ship to the consumer. That is, Amazon fulfills the order, hence the name, Fulfilled by Amazon. (By contrast, a smaller fraction of sales on Amazon are what Amazon considers "first-party" sales, in which Amazon itself sources the goods.) FBA has contributed to Amazon's wild success by allowing the company to externalize various supply chain costs—and by allowing Amazon to offer artificially low prices by avoiding collecting sales tax.

17.     FBA generally works as follows. Third-party merchants, such as OMG members, source products for possible sale on Amazon. Merchants propose a sale price to Amazon.[8] Amazon has full discretion to approve the products for sale, and to approve or reject the price, using an internal algorithm whose precise features are unknown to merchants. Amazon also retains editorial control over product listings. Amazon also controls where and how products are listed on the site—*i.e.*, the results consumers see when they search.

18.     After Amazon approves a merchant's proposed listing, Amazon will direct the merchant to ship the products to a warehouse of Amazon's choosing.  From there, Amazon may

---

[6] *See, e.g.*, Wayne Duggan, "Latest E-Commerce Market Share Numbers Highlight Amazon's Dominance," *Yahoo! Finance* (Feb. 4, 2020), https://finance.yahoo.com/news/latest-e-commerce-market-share-185120510.html ("Bank of America estimates Amazon currently has about 44% of U.S. e-commerce market share, up from 40% in 2018. Walmart is a distant second at just 7%, followed by eBay at 5% and Target at just 2%.").
[7] *Id.*
[8] *See* Amazon, "Business Solutions Agreement," https://sellercentral.amazon.com/gp/help/external/G1791?language=en_US.

keep the goods in that warehouse, or ship them anywhere for positioning, including after breaking up the lot.

19.     After a consumer purchases a product in Amazon's store, Amazon is responsible for selecting the warehouse from which to draw the product, packing the product, and shipping it to the consumer. Amazon also collects payment, and—after holding onto the funds for several weeks—credits the merchant's account.  On FBA sales, Amazon charges merchants a commission that can reach 45%.

20.     Amazon is in privity with consumers, whom Amazon deems the company's "customers." By contrast, under the terms of merchants' agreement with Amazon, merchants are not in privity with consumers. Amazon generally forbids merchant contact with consumers.

21.     For most Guild members, FBA is critical to survival on Amazon, despite the high commission. FBA can account for over 90% of sales for many members.

22.     To implement FBA, Amazon has a network of more than 180 fulfillment and sortation centers around North America.[9] Amazon no doubt has a sophisticated algorithm for where it stores items, but that algorithm is unknown to the Guild's members and beyond their control. Amazon has several FBA facilities in California, where it unilaterally chooses to store Guild members' goods.

23.     Once Guild members transfer custody of their goods to Amazon, they have no say in where Amazon moves the goods. Guild members have no control over which warehouse or warehouses Amazon chooses to use for storage. Guild members cannot instruct Amazon to use or not use warehouses in certain states. Nor can they order Amazon to pull goods out of certain states. When a consumer makes a purchase, Guild members cannot tell Amazon which warehouse to ship the item from. Nor can Guild members realistically "cancel" sales from particular warehouses or to particular locations.

_____

[9] Seller Essentials, "Amazon Warehouse Locations," https://selleressentials.com/amazon/amazon-fulfillment-center-locations/.

24.     The following FBA fact pattern is representative. Guild member X in Washington, DC sources a pallet of ink pens, and proposes a listing to Amazon. After Amazon approves the listing, Amazon directs the Guild member to ship the product to the nearest warehouse, in Baltimore. The merchant's role in the process is essentially over. Amazon unilaterally decides to break up the pallet, keeping some of the inventory in the mid-Atlantic, and positioning the rest around the country—*e.g.*, Houston, Stockton, and Reno. Months later, an Amazon customer in Sacramento searches for pens. Amazon decides which results to display. Assume that the consumer unknowingly chooses the pen that happens to be stored in California, perhaps because Amazon chose to display that result first. The consumer places an order; Amazon accepts, and Amazon chooses to fulfill that order from the Stockton warehouse rather than the Reno location or facilities further east.

25.     In the foregoing example, Amazon, not the Guild members, unilaterally decided to store goods in California and fulfill orders from those warehouses to Amazon's California customers. Amazon is subject to CDTFA's taxing authority for the sale, but the Guild's members are not. Yet CDTFA disregards the law and purports to claim personal jurisdiction over the Guild's members, as explained below.

**California's FBA Sales Tax Regime**

26.     First some background on California's sales tax regime.[10] The basic framework of California sales tax, which has existed for decades, is that retailers collect sales tax from the consumer at the point of sale, and then pass those collected amounts on to the state. So, in the pen example, one would expect Amazon to collect and remit the sales tax: it's Amazon's store; Amazon has physical custody of the pen; Amazon chose to store the pen in California; Amazon approves the listing, processes the sale, transfers the pen to the customer, and collects payment.[11]

---

[10] We use the familiar term sales tax to refer to sales and use taxes.
[11] *See, e.g.*, Cal Rev. & Tax Code § 6014-15 (providing statutory definitions of those obligated to collect sales taxes that match Amazon's conduct); Cal. Reg. 1569 ("A person who has possession of property owned by another, and also the power to cause title to that property to be transferred to a third person without any further action on the part

Until very recently, however, Amazon successfully defied its collection obligations, costing California billions in uncollected sales tax.

27.     To understand why there is a massive amount of uncollected tax, we need to go back in time. As *The Philadelphia Inquirer* reported, "[w]hen Amazon opened its first warehouse in California in 2013, it escaped the obligation to collect the taxes on sales by third-party merchants on the company's site, apparently by convincing state officials that it was not the retailer obligated to collect sales tax in those cases—a distinction that has since been undermined by court decisions in South Carolina, Pennsylvania, and elsewhere."[12]

28.     Around that time, when Amazon was building up the FBA program, states like California were seeking to tax online sales and correct the advantage that Amazon had over brick-and-mortar retailers. Amazon fought collecting taxes, until "cut[ting] a deal" to abandon the company's ballot initiative to change California tax law in exchange for an additional tax-free year.[13]

29.     As Amazon's tax-free year was ending, CDTFA was apparently planning to treat Amazon like any other store and require the company to collect sales tax on all of its sales. In September 2012, CDTFA told reporters that Amazon would have to collect taxes on FBA orders it fulfills: "Since Amazon is handling the merchandise and all aspects of the sale, the [CDTFA] would consider them the retailer, and Amazon would have to collect tax on the transaction."[14]

---

of its owner, and who exercises such power, is a retailer when the party to whom title is transferred is a consumer. Tax applies to his gross receipts from such a sale.").

[12] Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax Bill*," The Philadelphia Inquirer* (November 5, 2019), https://www.inquirer.com/business/california-sales-tax-amazon-seller-philadelphia-business-20191105.html; *see also Amazon Services, LLC v. S.C. Dep't of Rev.*, No. 17-ALJ-17-0238-CC (S.C. Admin. Law Ct. Sept. 10, 2019), https://src.bna.com/Leb.

[13] Jay Greene, "Amazon and California Lawmakers Cut Sales Tax Deal," *CNET.com* (September 8, 2011), https://www.cnet.com/news/amazon-and-california-lawmakers-cut-sales-tax-deal/.

[14] Declan McCullagh, "Amazon Shoppers Will Squeeze Through California Tax Loophole," *CNET.com* (September 11, 2012), https://www.cnet.com/news/amazon-shoppers-will-squeeze-through-calif-tax-loophole/.

30.     Here is the email from CDTFA's Deputy Director—second in command—to the media[15]:

> > On 9/10/12 4:35 PM, Stromberg, Venus wrote:
> > > Hi Declan,
> > >
> > > Deputy Director Garza asked me to respond to your inquiry.
> > >
> > > The following should be attributed to the California State Board of
> > > Equalization. If you need a quote or interview, I will put you in
> > contact with a spokesperson.
> > >
> > > Based on our understanding of how FBAs function in regards to
> > Amazon,  > Amazon has possession of the property and the power to
> > transfer title to  > the consumer. Since Amazon is handling the
> > merchandise and all aspects  > of the sale, the Board of Equalization
> > would consider them the retailer,  > and Amazon would have to collect tax on the transaction.
> > >
> > > I hope this information is helpful.
> > >
> > > Contact the office if you have any further questions.
> > >
> > > Venus Stromberg
> > >
> > > Office of Public Affairs
> > > (916) 327-8988
> > >
> > > *Connect with Us:***
> > >
> > > Follow BOE on Facebook
> > >

31.     But hours after the reporter asked Amazon for a quote in response, CDTFA issued a late-night "updated" position: Amazon would retain its tax advantage by refusing to collect tax on FBA sales.[16]

32.     The very next day, a CDTFA staffer gave Amazon's accountants a tax opinion letter based on Amazon's characterization of how it operates FBA.[17] Although the letter offered several caveats and contained basic legal errors, Amazon apparently used it to justify the company's refusal to collect sales taxes.

33.     Amazon's artificially lower prices gave the company a significant pricing advantage over brick-and-mortar stores and online competitors who did collect sales tax. Consumers, predictably, shopped in the store with lower prices, which helped contribute to the

---

[15] September 10, 2012 Email from Venus Stromberg on behalf of Deputy Director Garza (CDTFA) to Declan McCullagh (CNET.com), Exhibit 3.
[16] *Id.*
[17] Cary C. Huxsoll (BOE) Letter to Reed Schreiter (PricewaterhouseCoopers LLP) (September 11, 2012), Exhibit 4.

COMPLAINT - 10

downfall of various retailers. Amazon's artificially low prices also helped lure consumers to enroll in Amazon Prime, which was key to Amazon's growth strategy. Essentially, Amazon profited by creating a giant tax-free store. As *Capital & Main* observed, "It's highly likely that Amazon clears more profit than marketplace sellers on their transactions. So Amazon, by proxy, benefits financially from third-party tax avoidance, and the pricing advantage it provides. And, by not collecting tax, Amazon even avoids liability for mistakes made by third-party sellers that could trigger audits."[18] That is part of Amazon's overall strategy: "Amazon's continuous resistance to collecting sales taxes made it the first major American company to build its business based on tax avoidance. Contrary to popular belief, the company is still resisting today."[19]

34.     Why would California let Amazon escape paying billions of dollars in sales taxes? According to Treasurer Ma, the "[n]umber one" reason the state refused to make Amazon collect sales taxes was that "the governor's office has been trying to woo Amazon into putting a headquarters here. I've been pushing and they haven't wanted to do anything up front."[20] That regulatory favoritism is of a piece with other giveaways to Amazon. For example, California offered Amazon hundreds of millions in "incentives" and bespoke regulation to locate HQ2 in the state.[21]

35.     The sales tax piece of the giveaway scheme ended in late 2019, when Amazon agreed to begin collecting taxes pursuant to California's new "marketplace facilitator" law. But

---

[18] David Dayen, "The 'Amazon Tax' Ruling: Disrupting the Disruptors?," *Capital & Main* (July 10, 2018), https://capitalandmain.com/the-amazon-tax-ruling-disrupting-the-disruptors-0710.
[19] *Id.*
[20] *Id.*
[21] Jeff Collins, "Gov. Brown Pledges Hundreds of Millions in Incentives for Amazon HQ2 in California," *The Orange County Register* (October 18, 2017), https://www.ocregister.com/2017/10/18/brown-pledges-hundreds-of-millions-in-tax-incentives-for-amazon-hq2/ (documenting hundreds of millions in tax credits, "employment training funds," property tax abatement, a "'strike team' to expedite all permits and approvals," promised legislation to "streamlin[e]" the CEQA approval process, etc.).

COMPLAINT - 11

what about the taxes Amazon refused to collect for the prior decade? That's where CDTFA's challenged conduct comes in.

### CDTFA's Registration and Collection Position

36. CDTFA is now apparently trying to clean up for Amazon's decade of tax avoidance. But rather than looking to Amazon, CDTFA has actually partnered with Amazon to go after non-resident small businesses that lack Amazon's political and economic power in the state.

37. The challenged CDTFA policy works as follows. According to CDTFA, non-resident Guild members are "*required* to collect and pay sales and/or use tax" if, *inter alia*, they "use, *directly or indirectly*, or through a subsidiary or agent, a . . . . place of distribution, . . . warehouse or storage place, or other physical place of business in California."[22] CDTFA publications elaborate: "If you use a California fulfillment center to store your inventory, you are required to register with the CDTFA and file sales and use tax returns."[23] Similarly, "[i]f you are an out-of-state seller that uses a California fulfillment center to store your inventory for delivery to consumers in California, you are also required to register with the CDTFA and file sales and use tax returns. You are responsible for reporting and paying the tax to the CDTFA on your retail sales to California consumers. You may also be responsible for other fees; your online application will determine what licenses or permits with the CDTFA may be required."[24]

38. CDTFA's definition of "fulfillment center" tracks and is modeled on Amazon's FBA program: "A fulfillment center is a location, generally a warehouse facility, where orders

---

[22] CDTFA, "Do You Need to Register with California?," https://www.cdtfa.ca.gov/industry/out-of-state-retailers.htm#Registration (first emphasis in original; second added).

[23] CDTFA, "Publication 77, Out-of-State Sellers: Do You Need to Register with California?, Examples," https://www.cdtfa.ca.gov/formspubs/pub77/#examples.

[24] CDTFA, "Fulfillment Centers," https://www.cdtfa.ca.gov/industry/fulfillment-centers.htm; see also CDTFA, "Form 38-A (7-19)," https://cdtfa.ca.gov/formspubs/forms.htm (claiming nexus over non-residents who "were engaged in business in this state solely because you used a marketplace facilitator . . . to facilitate sales for delivery in this state and the marketplace facilitator stored your inventory in this state").

COMPLAINT - 12

for tangible merchandise are received, packaged, and picked up by a common carrier for shipment to the customer."[25]

39.     As applied to Amazon's FBA program, then, CDTFA purports to require foreign citizens whose goods Amazon unilaterally chooses to store in California to register with the agency and collect state and district sales tax on Amazon's sales of those goods. The Due Process Clause commands otherwise,[26] but that has not deterred CDTFA.

40.     CDTFA's claims to jurisdiction go even further. Amazon uses a process called "commingling," in which the company fulfills orders from a different merchant's goods if it saves Amazon money.[27] In a typical fact pattern, a customer places an order from merchant 1's listing. But if merchant 2's identical item is located closer to the customer, Amazon will fulfill the order from merchant 2's supply and credit the sale to merchant 1. In that event, merchant 1's item would never even enter the state in question—yet CDTFA will still claim personal jurisdiction over merchant 1 for the sale (and then CDTFA will claim jurisdiction over merchant 1's business in general).

41.     CDTFA goes even further still. According to CDTFA, a single item stored by Amazon in California gives the agency personal jurisdiction over the rest of the non-resident merchant's business. Not only does that violate the Due Process Clause,[28] it deprives Guild members of the benefit of California's supposed online tax threshold and violates the Internet Tax Freedom Act.

---

[25] CDTFA, "Publication 109, Internet Sales, Online Marketplaces and Fulfillment Centers," https://www.cdtfa.ca.gov/formspubs/pub109/#online.
[26] *See, e.g.*, *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450 (9th Cir. 2007) ("The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987))); *accord J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).
[27] Rafelson Dec. ¶ 11, Exhibit 2; Freifelder Dec. ¶ 8, Exhibit 11.
[28] *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).

42.     In addition to demanding taxes, CDTFA insists on registration.[29] Registration triggers more registration. For example, "[i]f you are required to register in California for a Seller's Permit or a Certificate of Registration – Use Tax, you may have other registration and fee requirements" such as those relating to "covered electronic devices," certain batteries, tires, lumber, and building products containing at least 10% wood.[30] California also imposes recordkeeping requirements: "When you hold a California seller's permit or other CDTFA license or permit, you are required to maintain your business records to verify that you have properly paid the fee."[31] Such "[r]ecords must be kept for at least four years," and longer in the case of an audit (which can stretch for years).[32]

43.     And on top of that, after ensnaring non-residents California may seek income tax or other revenue streams.[33]

## CDTFA's Injuries to the Guild and its Members

44.     CDTFA is seeking to enforce the above registration and collection policies against hundreds of Guild members and thousands of similarly-situated businesses. Using names and email addresses supplied by Amazon, CDTFA has targeted the online merchants who supply goods to Amazon for Amazon's store.[34] CDTFA's tactics go beyond what even the most brazen private debt collector, mindful of the Fair Debt Collection Practices Act, would attempt.

---

[29] *E.g.*, CDTFA, "Publication 77, Out-of-State Sellers: Do You Need to Register with California?, Examples," https://www.cdtfa.ca.gov/formspubs/pub77/#examples;
[30] CDTFA, "Publication 77, Out-of-State Sellers: Do You Need to Register with California?, Additional Accounts, Licenses and Permits," https://www.cdtfa.ca.gov/formspubs/pub77/#additionalAcccounts.
[31] CDTFA, "Doing Daily Business," https://www.cdtfa.ca.gov/industry/out-of-state-retailers.htm#DoingDailyBusiness.
[32] CDTFA, "Tax Guide for Out-of-State Retailers, Doing Daily Business," https://www.cdtfa.ca.gov/industry/out-of-state-retailers.htm#DoingDailyBusiness.
[33] See Multistate Tax Commission, *Nexus FAQs*, http://www.mtc.gov/Nexus-Program/Online-Marketplace-Seller-Initiative/FAQ.
[34] *See, e.g.*, Amazon Email to Sellers, Exhibit 5 (Amazon mass-emailing suppliers regarding disclosure of their contact information and federal taxpayer identification numbers to CDTFA); Gail Cole, "Not All States Want Marketplace Facilitators to Collect Tax. Some Just Want Information.," *Alvara* (Dec. 7, 2018), https://www.avalara.com/us/en/blog/2018/12/not-all-states-want-marketplace-facilitators-to-collect-tax-some-just-want-information.html (describing how Amazon shared supplier information with California and other states).

45.     CDTFA agents have been demanding that non-residents register with the state to collect sales tax on pain of jail time. For example, CDTFA personnel have unilaterally concluded that Guild members must register with the state, and then warned Guild members that if they "choose not to voluntarily [*sic*] comply to obtain a sellers permit," they could be "**guilty of a felony**," fined thousands of dollars, and "**imprison[ed] for 16 months, two years, or three years**."[35]

46.     Similarly, CDTFA agents have written to Guild members to "set up an appointment with you for registration," while simultaneously warning that that if the member declines, "**you can be prosecuted** and billed, [and] become unable to receive penalty relief."[36]

47.     When merchants register, CDTFA then goes after the merchants for retrospective taxes **back to 2012**.[37]

48.     Because Amazon did not collect sales tax on its sales during that period, Amazon's merchants do not have the tax receipts to turn over to CDTFA. Payments would have to come out of revenue or other sources—money that Guild members in general do not have.

49.     CDTFA has also been unliterally deciding how much non-resident merchants "owe" and sending demand letters for payment. Guild members have received seven-figure "assessments" backed up by threats of criminal prosecution. One target was Guild member Brian Freifelder from Pennsylvania, who was the subject of widespread media coverage.[38] Brian received a CDTFA demand for $1.6 million for just a six-month period in California, which

_____

[35] March 2018 Email from CDTFA to Guild member (emphasis added), Exhibit 6; *see also* various correspondence from CDTFA to Guild members, Exhibit 7.
[36] March 2018 Email from CDTFA to Guild member, Exhibit 8 (emphasis in original).
[37] February 2018 Email from CDTFA to Guild member ("Your company is required to file Sales and Use Tax returns on a Quarterly basis with a start date of 9/5/2012. All sales of tangible personal property are retail sales and subject to tax, unless supported by documentation as being exempt."), Exhibit 9; *see also, e.g.*, January 24, 2019 Email from CDTFA to Guild member (demanding tax returns "from 2Q14 through 2Q17"), Exhibit 10.
[38] Declaration of Brian Freifelder, Exhibit 11.

exceeded the plausible taxes on "every sale [he has] ever done."[39] After Brian pointed out the obvious error, CDTFA cut the assessment to approximately $30,000—raising serious questions about the good-faith basis for the original demand. The Guild has observed a similar pattern in which CDTFA will make large demands on other merchants, untied to the sales at issue, apparently to gain negotiating leverage through fear.

50.     Brian was only one of many CDTFA targets. According to the *Philadelphia Inquirer*, there are "**hundreds of thousands** of third-party merchants on Amazon who were informed by [CDTFA] that they should have been collecting taxes on sales to California residents as far back as 2012."[40]

51.     Guild member Denise Rasbid is another target whom CDTFA has driven nearly to the end of her business. Denise started her Illinois-based eCommerce clothing boutique after auto-immune disease and small children took her out of the corporate world. Her business is successful by third-party merchant standards, but still modest: for 2019, she paid herself "just under $11,000 for 40-60 hours per week" of work.[41] Denise's world was turned upside down when, in 2019, CDTFA emailed her demanding that—because of her FBA participation—she must register with the agency, pay years of back taxes, and collect California sales tax prospectively. CDTFA also threatened her with penalties and interest. CDTFA's demands have contributed to the looming bankruptcy of Denise's business, because she cannot pay the allegedly due past amounts and the compliance burdens of prospective tax collection are significant for a small enterprise like hers. CDTFA's conduct has also made it essentially prohibitive for Denise to diversify her business away from Amazon.

---

[39] Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax Bill," *The Philadelphia Inquirer* (November 5, 2019), https://www.inquirer.com/business/california-sales-tax-amazon-seller-philadelphia-business-20191105.html.
[40] *Id.*
[41] Declaration of Denise Rasbid, Exhibit 12.

52.     Another example is Alice Kim, Guild member and founder of Hanalei Beauty Company in Hawaii.[42] Hanalei is female- and minority-owned, and employs 25 people. In 2019, CDTFA called Alice and demanded more than $10,000 in taxes on prior Amazon sales. After Alice's attempt to explain that Amazon, not she, controlled whether her products were stored in California "fell on deaf ears" and led to "threat[s]" from CDTFA, Alice simply paid the taxes. Giving in to CFTA's demands was economically rational—it would have cost far more than $10,000 to litigate for years against the agency. Alice's is a classic example of a negative value claim, and there are thousands more merchants in her shoes.

53.     Yet another example is Guild member Mindy Wright, who owns and operates a small eCommerce business based in Washington.[43] In late 2018, CDTFA demanded that Mindy register to collect taxes for California; after she began doing so and collecting sales tax prospectively, CDFTA then pursued her for up to 8 years of supposedly-due retrospective taxes. Mindy faces tens of thousands of dollars in back taxes, penalties, and interest, which is beyond her means. She may be forced to close her business and seek bankruptcy protection.

54.     Arnold Norman is another Guild member.[44] After he and his wife were laid off in their mid-50s during the Great Recession, they founded an eCommerce business focused on products for people suffering from Alzheimer's, dementia, and similar maladies—conditions Arnold and his wife had seen loved ones suffer and die from. Being New Yorkers, they set up to collect New York taxes and file quarterly sales taxes with that state. But in late 2018, CDTFA demanded that they register with California. Fearful, they did—then the agency demanded California sales taxes back to at least 2015. Arnold and his wife have spent thousands in professional fees dealing with those demands, and paid thousands in back taxes out of pocket. Now CDTFA is demanding tens of thousands more—money Arnold and his wife do not have.

_____

[42] Declaration of Alice Kim, Exhibit 13.
[43] Declaration of Mindy Wright, Exhibit 14.
[44] Declaration of Arnold Norman, Exhibit 15.

But, as he explains, "we cannot afford to challenge CDTFA in California state court"; it would "make more sense for us just to 'give in,'" because "we just cannot afford to fight CDTFA."[45]

55.     Tax collectors like CDTFA don't just threaten jail time. They seize funds from Amazon accounts. They seize funds from accounts in national banks. They may seize funds from IRS refund accounts. They are relentless.

56.     Guild members face serious financial hardship, ranging from bankruptcy to job cuts, to say nothing of loss of expansion, as a result of CDTFA's demands for money that Guild members do not have. Further, CDTFA's aggressive practices are chilling participation in the interstate marketplace and investment in American jobs. The registration and reporting requirements impose substantial costs on non-resident small businesses. For many members, the cost of multi-state or nationwide compliance alone could exceed their profit margin.

57.     As referenced above, California's elected Treasurer, Fiona Ma, has publicly criticized CDTFA's actions as "unlawful, unconstitutional, and impractical."[46] Treasurer Ma, a former Chair of the State Board of Equalization (which housed what became CDTFA), urged Governor Newsom to intervene and stop CDTFA's injurious conduct. As Treasurer Ma explained to Governor Newsom, "the real travesty is that these actions by CDTFA . . . are also causing many of the third-party sellers to go out of business and into bankruptcy."[47]

58.     CDTFA is the most aggressive state revenue agency but is not alone among them in pursuing FBA merchants for Amazon's sales, giving these issues an additional interstate element. As an illustration of what other states are doing to Guild members, Wisconsin's tax agency has been posting individuals names online and threatening to seize IRS tax refunds before they are distributed to the taxpayer.[48] Washington State tax collectors have demanded

_____

[45] *Id*. at ¶ 10.
[46] March 8, 2019 Letter from Treasurer Fiona Ma, CPA, to Governor Gavin Newsom, Exhibit 1; *see also* March 3, 2020 Written Testimony of Fiona Ma to Congress, Exhibit 16.
[47] *Id*. at 4.
[48] Wisconsin Department of Revenue Correspondence to Guild Member, Exhibit 17.

COMPLAINT - 18

nearly $200,000 from Guild member Jennifer Jenson, who runs a Native American-owned

eCommerce business from Utah.[49] Washington claims to be able to tax her entire business back

to 2010 because a single customer returned a single book to Amazon—at Amazon's direction—

to an Amazon warehouse in Washington state. Jenson is facing three or four more years of

administrative process while making payments on an installment plan due to financial hardship.

He cannot get into Washington state court and challenge the assessment until after the

administrative process concludes. And now CDTFA is after her as well. As she explains, her

business cannot withstand the administrative costs—to say nothing of the surprise penalties—

and her business is "probably one tax judgment away from collapsing."[50] Because it "doesn't

really make economic sense for us to fight," they may just "'give in' and start over with a

different business."[51] Multiply these problems by 50 states, and the result is chaos in the

marketplace. The combined effect of these demands on Guild members is chilling their

participation in the interstate marketplace, while illustrating why challenging individual

assessments in individual state actions is not viable.

59.     Many affected merchants have contacted the Guild for help and guidance.[52] The

Guild has spent thousands of hours assisting its membership and working on their behalf with

respect to CDTFA's challenged conduct. In addition to educating members and assisting affected

and concerned individuals, the Guild has engaged in public advocacy work, including organizing

and submitting information to regulators and legislators. The Guild now turns to the courts for

protection of the Guild's members' constitutional rights.

**This Court is a Proper Forum for This Controversy**

60.     Although CDTFA will likely try to hide behind the Tax Injunction Act, 28 U.S.C.

§ 1341, the TIA does not strip this Court of jurisdiction for a variety of reasons. In the first

---

[49] Declaration of Jennifer Jenson, Exhibit 18.
[50] *Id*. at ¶ 8.
[51] *Id*.
[52] Rafelson Dec. ¶ 28, Exhibit 2.

instance, the Guild has no "plain, speedy and efficient remedy" for vindicating its interests or its members' interests in state court.[53] As a matter of California law, only the taxpayer who pays the tax has standing to challenge an assessment, which limits the Guild's standing on behalf of its members in state court, since the Guild is not the taxpayer.[54] Further, California law places severe limits on the availability of injunctive relief in tax matters.[55]

61.     The Guild also challenges various provisions and policies that are not acts of "assessment, levy or collection" and are therefore outside the scope of the TIA.[56]

62.     For their part, the Guild's members also lack an effective means of vindicating their federal constitutional rights in California state court. The state procedural framework precludes meaningful scrutiny of CDTFA's compliance with basic constitutional guarantees, and effectively immunizes constitutional violations at mass scale.

63.     California is a pay-to-play state: litigants first have to pay a tax before challenging whether the tax is lawful in the first place.[57] That process is lengthy and expensive. When CDTFA issues a tax assessment against a Guild member, the matter is first handled in a layered administrative scheme. Guild members cannot raise constitutional issues in that process. Instead, Guild members who want to raise even threshold questions like personal jurisdiction must wait out the administrative process, pay any amount the administrators demand, and then file a refund action in California state court. The "price" of entering the courtroom is years of administrative delay, thousands (or more) in surrendered assets, and thousands in legal fees. Very few of the Guild's members have the financial resources to vindicate their rights in that manner. Instead, the economically rational response for a small business—and the response CDTFA counts on—is to

---

[53] 28 U.S.C. § 1341.
[54] *See* Cal Rev. & Tax Code § 6391; *IBM Personal Pension Plan v. San Francisco*, 131 Cal. App. 4th 1291 (2005) (non-taxpayers lack standing to challenge assessed taxes under California law).
[55] *See* Cal. Const., Art. XIII § 32 ("No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax.").
[56] *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 8 (2015).
[57] Cal. Const., Art. XIII § 32; Cal Rev. & Tax Code § 6931.

surrender. CDTFA is thus able to capitalize on the negative value element of the claims at issue here. That is what happened to Guild member Alice Kim. As another example, Guild member Denise Rasbid is unable to reasonably afford challenging the basic lawfulness of CDTFA's demand. She is already stretched to the end financially, and cannot afford to pay to access California's state court system.

64.     Individual litigation is also completely inefficient at the judicial system level because CDTFA has targeted thousands of businesses, leading to the possibility of thousands of individual challenges. California law also imposes the same economically irrational barrier on class actions as it does on individual actions: "there is no bar to certification of a class action for refund of unconstitutional taxes *so long as all class members have filed their own individual claims and thereby exhausted their remedies*."[58] In other words, the state court limits on taxpayer class actions enforce the very negative-value problem class actions are otherwise intended to remedy.

65.     Guild members who are not yet in CDTFA's sights, but fear becoming so, appear to have no *ex ante* means of challenging the assessment regime in state court, since paying an assessment is the price of access to the state court system. As for Guild members whose products Amazon stored in California, they face uncertainty about whether and when and in what amount CDTFA will assess them, and further uncertainty and delay regarding any challenge to the lawfulness of that assessment. This includes Guild members referenced herein, because it is unclear whether CDTFA has completed targeting their prior FBA sales.

66.     There are also multi-state aspects to the problems at issue here, which further remove this case from the TIA. California is the most aggressive, but not the only, state to pursue non-residents in the manner described herein. Dozens of states have attempted to use the

_____

[58] *Franchise Tax Bd. Limited Liab. Corp. Tax Refund Cases*, 25 Cal. App. 5th 369, 386 (2018) (emphasis added).

1    Multistate Tax Commission to pressure third-party merchants to pay sales tax revenues Amazon

2    should have but did not collect.[59]

3        67.    Further removing this case from the TIA, the remedies sought herein will not

4    deprive California of revenue, much less of revenue to which the state is lawfully entitled. As

5    Treasurer Ma has explained (writing then as a Member of the Board of Equalization), it is

6    "inefficient, if not impossible for [CDTFA] to properly audit thousands of FBA retailers around

7    the U.S. who are having orders fulfilled through Amazon fulfillment centers in the State of

8    California"; but by collecting taxes from Amazon, "CDTFA would only have to audit one

9    company and compliance would significantly improve. The State of California would also see

10   billions of dollars of additional revenue that could fund vital programs and services."[60] CDTFA's

11   targeting of thousands of Amazon's suppliers rather than Amazon itself is even more impractical

12   and suspect when one considers the problem of overseas suppliers. Hundreds of thousands of

13   Amazon's suppliers are based in China, where they are practically if not legally beyond

14   CDTFA's reach.

15       68.    Moreover, CDTFA's conduct is effectively a tax credit or subsidy to Amazon,

16   challenges to which are generally outside the scope of the TIA.

17       69.    Additionally, the Internet Tax Freedom Act reflects Congressional intent to limit

18   jurisdiction-stripping where the TIA might otherwise be applicable.

19       70.    CDTFA cannot invoke the comity doctrine (to the extent it remains a basis for

20   declining jurisdiction[61]) for various reasons. For one thing, "comity is a two-way street, requiring

21

22

---

23   [59] *See* Eugene Kim, "Some Amazon Sellers Can Avoid Paying Back Sales Taxes through a Temporary Amnesty
     Program," *CNBC* (August 3, 2017), https://www.cnbc.com/2017/08/03/some-amazon-sellers-can-avoid-paying-
24   back-sales-taxes-through-a-temporary-amnesty-program.html (describing the multi-state nature of the issue); Matt
     Day, "Amazon Pulled Into Another Sales-Tax Fight as States Go After Third-Party Sellers on Its Marketplace," *The
25   Seattle Times* (November 8, 2017), https://www.seattletimes.com/business/amazon/amazon-pulled-into-another-
     sales-tax-fight-as-states-go-after-third-party-sellers/ (similar).
26   [60] August 31, 2017 Letter from Fiona Ma, CPA to Keely Martin Bosler, Cabinet Secretary, Office of Governor
     Edmund G. Brown Jr., Exhibit 19.
27   [61] *See, e.g.*, *Sprint Comms. v. Jacobs*, 571 U.S. 69, 77 (2013) ("Jurisdiction existing, this Court has cautioned, a
     federal court's obligation to hear and decide a case is virtually unflagging.") (cleaned up).

a delicate balancing of sometimes-competing state and federal concerns."[62] CDTFA cannot

violate multiple federal interests (*e.g.*, constitutional rights, the interstate economy) and the

interests of other states (*e.g.*, the due process rights of their own citizens[63]) and then invoke

comity as a shield. Further, the *Levin* "considerations" do not apply.[64] Comity is no basis for

declining jurisdiction.

**Causes of Action**

**<u>Count 1</u>**

**CDTFA's demand for and seizure of money belonging to non-resident Guild members**

**violates the Due Process Clause.**

71.    The Online Merchants Guild incorporates the foregoing paragraphs as if set forth

herein.

72.    By demanding and seizing under threat of criminal and civil punishment money

from Guild members over whom CDTFA lacks personal jurisdiction, CDTFA is violating the

Fourteenth Amendment's Due Process Clause in multiple ways.

73.    CDTFA lacks personal jurisdiction over the affected Guild members for purposes

of tax assessment. In the tax context, a state must have "nexus" to exercise power over a non-

resident. The Supreme Court has long recognized two independent aspects of "nexus" that a state

must satisfy to regulate a non-resident. One aspect arises from the Due Process Clause; the other

from the Commerce Clause. Although they are "closely related," the Due Process Clause and the

Commerce Clause "pose distinct limits on the taxing powers of the States. Accordingly, while a

State may, consistent with the Due Process Clause, have the authority to tax a particular

---

[62] *Trump v. Vance*, 941 F.3d 631, 638 (2d Cir. 2019), *aff'd*, 140 S. Ct. 2412 (2020).

[63] *See, e.g.*, *Bristol Myers-Squibb*, 137 S. Ct. at 1780 ("restrictions on personal jurisdiction . . . are a consequence of territorial limitations on the power of the respective States. . . . The sovereignty of each State implies a limitation on the sovereignty of all its sister States.") (cleaned up).

[64] *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 431-32 (2010).

taxpayer, imposition of the tax may nonetheless violate the Commerce Clause"—or vice versa.[65] The two clauses "reflect different constitutional concerns" and are "analytically distinct."[66] And "while Congress has plenary power to regulate commerce among the States and thus may authorize state actions that burden interstate commerce, it does not similarly have the power to authorize violations of the Due Process Clause."[67]

74.    Among other aspects, the Due Process Clause imposes personal jurisdiction-based limits on state authority to regulate non-residents. The familiar personal jurisdiction rules from the litigation context have long applied in the tax context.[68]

75.    CDTFA is purporting to regulate Guild members over whom California lacks personal jurisdiction. The Guild members at issue are non-Californians, over whom CDTFA purports to base jurisdiction not on the members' actions, but on Amazon's unilateral decision to store items in Amazon's possession in Amazon's California warehouses and ship orders to Amazon's California customers from those warehouses. The Guild members at issue did not thereby deliberately affiliate with California, lack sufficient contacts with the state, and are not subject to personal jurisdiction in the state.

76.    CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

77.    Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

---

[65] *Quill Corp. v. N.D*, 504 U.S. 298, 305 (1992) (quoting *Bella Hess v. Dep't of Rev. of Ill.*, 386 U.S. 743, 756 (1967); citing *Tyler Pipe Indus., v. Wash. State Dep't of Rev.*, 483 U.S. 232 (1987)). *Wayfair* overruled a discrete and different aspect of *Quill* and *Bella Hess. See Wayfair*, 138 S. Ct. at 2099.
[66] *Quill Corp.*, 504 U.S. at 305.
[67] *Id.*
[68] *See, e.g.*, *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2091 (2018) (tracing the "minimum contacts" requirement).

## Count 2

**CDTFA's registration demands violate the Due Process Clause.**

78.     The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

79.     For reasons similar to those in Count 1, California lacks personal jurisdiction over the Guild members at issue and CDTFA cannot require them to register as tax collection agents for the state. Yet CDTFA has threatened Guild members with felony jail time if they refuse to register.

80.     CDTFA's conduct has caused and will continue to cause irreparable injury to the Online Merchants Guild and its members.

81.     Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

## Count 3

**CDTFA is violating the Commerce Clause by imposing discriminatory and burdensome restrictions on interstate commerce.**

82.     The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

83.     By pursuing the Guild's members instead of Amazon for the sales taxes at issue, CDTFA is discriminating against out-of-state merchants in favor of Amazon because Amazon offers state politicians substantial in-state "benefits" that Guild members cannot offer. That discrimination is a *per se* violation of the dormant Commerce Clause.[69]

84.     CDTFA's demand for back taxes also fails the *Complete Auto* test because the demand does not apply to an activity through which Guild members create a substantial nexus to

---

[69] *Granholm v. Heald*, 544 U.S. 460, 476 (2005) ("State laws that discriminate against interstate commerce face a virtually *per se* rule of invalidity.")

COMPLAINT - 25

California; the demand is not fairly apportioned as between Amazon and the Guild's members; the demand discriminates against interstate commerce, particularly by favoring Amazon's in-state conduct over the interests of non-resident small businesses and by interfering with Guild members' participation in the interstate eCommerce market; and the demand is not fairly related to the services California provides, since the Guild's members did not seek out any such services.[70]

85.     CDTFA's demand for taxes stretching back nearly a decade imposes an undue burden on the Guild's members, contrary to *Wayfair* and other precedents.[71]

86.     CDTFA's conduct also fails the *Pike* standard because the regulation imposes burdens on interstate commerce that clearly exceed any legitimate local interest.[72] Among other things, CDTFA's conduct severely burdens the ability of Guild members to participate in the interstate economy (and in some cases even to exist as going concerns). By contrast, the main local "benefit" is the continuation of an illegitimate subsidy to Amazon. CDTFA's conduct cannot provide a material local benefit in the sense of increased tax revenue, because CDTFA is unlikely to obtain significant revenue by pursuing thousands of low-income businesses, in comparison to the revenue CDTFA could obtain by pursuing Amazon. And CDTFA's conduct, if and when replicated by other states, poses additional harms to the interstate marketplace.

87.     CDTFA's application of the small-business threshold imposes an undue burden on interstate commerce. The *Wayfair* Court pointed to dollar thresholds designed to limit the tax burden on non-resident small businesses as a means of limiting Commerce Clause problems.[73] Dollar thresholds operate such that only companies who do significant business in a state, and

---

[70] *Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 279 (1977).
[71] *Wayfair, Inc.*, 138 S. Ct. at 2098 ("In this case, however, South Dakota affords merchants a reasonable degree of protection. . . . [T]he law is not retroactive."); *United States v. Carlton*, 512 U.S. 26, 38 (1994) (O'Connor, J., concurring) (explaining that periods of retroactivity longer than a year are rarely attempted, have not been sustained, and would likely raise "serious constitutional questions").
[72] *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).
[73] *Wayfair*, 138 S. Ct. at 2099.

COMPLAINT - 26

are thus presumably large enough to shoulder the compliance burdens, can be made responsible for collecting sales tax. California's new Marketplace Facilitator Act contains a threshold: non-residents who sell less than $500,000 are supposed to be exempt from sales tax collection obligations.[74] But CDTFA disregards that threshold. According to the agency, any merchant whose goods Amazon stores in a California warehouse is not really a non-resident merchant at all; instead, the presence of "inventory" in California means they are resident and are ineligible for the threshold.[75] Essentially, according to CDTFA, one dollar of merchandise stored and sold—by Amazon—in California will grant CDTFA taxing authority over the rest of the merchant's business. Not only is that unlawful, it deters merchants from using the threshold to grow a business line outside Amazon. CDTFA's policy has the intent and effect of precluding merchants from diversifying away from Amazon.

88.     CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

89.     Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

## Count 4

### CDTFA's registration requirements violate the Commerce Clause.

90.     The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

91.     CDTFA's demand that non-resident small businesses register with the agency (and become tax collectors for the agency) imposes a substantial burden on interstate commerce.

---

[74] Cal. RTC § 6203(c)(4) (excluding from the definition of retailers obligated to collect tax those who have sales for delivery in California that do not exceed $500,000 per year); CDTFA, Use Tax Collection Requirements Based on Sales into California Due to the *Wayfair* Decision, Overview, https://www.cdtfa.ca.gov/industry/wayfair.htm (explaining that "remote sellers" who sell more than $500,000 are responsible for collecting sales tax).
[75] CDTFA, "Tax Guide for Marketplace Facilitator Act, FAQs," https://cdtfa.ca.gov/industry/MPFAct.htm#note3.

The compliance costs are significant, and given CDTFA's practices challenged herein, understandably lead Guild members to fear that they will become subject to additional burdens by the agency. That has the effect of chilling Guild members' participation in the interstate marketplace.

92.     There is no lawful local benefit that outweighs those injuries, because CDTFA cannot lawfully regulate the Guild's non-resident members, and any information the agency needs for a lawful local purpose can be derived directly and more efficiently from Amazon.

93.     Insofar as CDTFA places the burden on non-resident merchants, while refusing to place the burden on Amazon (despite Amazon's in-state presence and benefits to the state), CDTFA is directly discriminating against foreign residents in *per se* violation of the Commerce Clause.

94.     CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

95.     Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

## **Count 5**

**CDTFA is violating the Equal Protection Clause by preferentially benefiting Amazon and burdening the Guild's members.**

96.     The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

97.     There is one sale—in Amazon's store—to tax. As between Amazon or the Guild's members, CDTFA chose to impose burdens on the politically weak Guild members instead of the politically powerful Amazon. CDTFA made that decision on the basis of political favoritism,

regulatory capture, economic protectionism, and bureaucratic self-interest, which violates the Equal Protection Clause.[76]

98.     CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

99.     Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

## Count 6

**CDTFA is violating the Privileges and Immunities Clause by treating non-resident Guild members differently than Amazon.**

100.     The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

101.     The Privileges and Immunities Clause prohibits CDTFA from treating non-resident Guild members substantially differently than Amazon (which has a large in-state presence) absent a substantial and legitimate justification.

102.     As to the same alleged tax collection obligation, CDTFA pursues non-resident Guild members while continuing Amazon's subsidies, in the hopes that Amazon will increase its in-state presence and in-state political benefits, which does not further any substantial and legitimate justification.

103.     CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

104.     Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the equal protection rights of the Guild and its members.

---

[76] *See, e.g.*, *Merrifield v. Lockyer*, 547 F.3d 978, 991-92 (9th Cir. 2008) (regulation "designed to favor economically certain constituents at the expense of others similarly situated" is unconstitutional).

1

**Count 7**

2

**CDTFA's discrimination violates the Internet Tax Freedom Act.**

3     105.    The Online Merchants Guild incorporates the foregoing paragraphs as if set forth

4  herein.

5     106.    The Internet Tax Freedom Act (ITFA) prohibits California from, *inter alia*,

6  imposing "discriminatory taxes on electronic commerce," which are defined as taxes that are

7  "not generally imposed and legally collectible . . . on transactions involving similar property,

8  goods, services or information accomplished through other means."[77] The ITFA further prohibits

9  California from imposing on electronic commerce "an obligation to collect or pay the tax on a

10  different person or entity than in the case of transactions involving similar property, goods,

11  services, or information accomplished through other means."[78]

12     107.    Congress intended for the ITFA to provide a private right of enforcement for

13  damages and other appropriate relief.

14     108.    For purposes of the ITFA, Amazon has a brick-and-mortar component to its

15  business in California, including multiple FBA warehouses and other physical sites (existing and

16  hoped-for) that provide political benefits to the state. By imposing the tax and registration

17  requirements challenged herein on the out-of-state Guild members who participate in protected

18  eCommerce, but not on Amazon's de facto brick-and-mortar operations, CDTFA is

19  discriminating against eCommerce in violation of the ITFA.

20     109.    CDTFA further discriminates against eCommerce by imposing the tax and

21  registration requirements challenged herein on Guild members who supply Amazon's

22  eCommerce store, while CDTFA would not impose the same requirements on out-of-state

23  suppliers who supply goods housed for sale by traditional brick-and-mortar retailers in their

24  warehouses.

25

26

27  [77] Internet Tax Freedom Act Section 1101(a); Section 1105(2), codified at 47 U.S.C. § 151, Note.
    [78] *Id.*

COMPLAINT - 30

110.    CDTFA's past, present, and future violations of the ITFA have caused the Guild and its members damages and irreparable injury.

111.    Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

## Count 8

**CDTFA is violating the Due Process Clause by imposing retroactive taxes far in excess of those that might be constitutionally permissible.**

112.    The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

113.    CDTFA is attempting to impose massive retroactive taxes without adequate contemporaneous notice. Many merchants have received demands for taxes stretching back nearly a decade.

114.    Those massive retroactive liabilities violate the limits on retroactive legislation in general and retroactive tax regulation in particular.

115.    CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

116.    Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

## Count 9

**California's pay-to-play system for vindicating constitutional rights violates the Due Process Clause.**

117.    The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

118.    The operative California process for challenging the constitutionality of state tax assessments fails to provide due process before Guild members are deprived of their property

and before they can challenge the lawfulness of other regulatory requirements. As set forth herein, at least as applied, CDTFA is able to capitalize on the nature and negative-value aspects of the sums at issue to effectively preclude constitutional scrutiny of how the agency seizes money belonging to private citizens.

119.    CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

120.    Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

**Count 10**

**CDTFA is violating the Due Process Clause by imposing tax and registration obligations on the basis of unconstitutionally vague language and policies.**

121.    The Online Merchants Guild incorporates the foregoing paragraphs as if set forth herein.

122.    CDTFA is attempting to impose taxation and registration requirements on the basis of statutory and regulatory language and policies that did not and do not give sufficient notice to the Guild's members of what was necessary to comply with the law.

123.    Yet, despite the impermissibly vague language, CDTFA continues to seek to enforce those provisions against the Guild's members.

124.    CDTFA's conduct has caused and will continue to cause damages and irreparable injury to the Online Merchants Guild and its members.

125.    Injunctive and declaratory relief is necessary to remedy CDTFA's violations of law and to vindicate the constitutional rights of the Guild and its members and to prevent further irreparable injury to the interstate economy.

**Prayer for Relief**

126.    The Online Merchants Guild respectfully requests, on behalf of itself and its members, the following relief:

a.    A declaration pursuant to 28 U.S.C. § 2201 that CDTFA's conduct and application of California law to the Online Merchants Guild's members as set forth herein is unconstitutional;

b.    An order and judgment enjoining CDTFA from further such constitutional violations;

c.    Costs and attorney's fees pursuant to 42 US.C. § 1988;

d.    Damages for CDTFA's violation of the U.S. Constitution and the Internet Tax Freedom Act;

e.    A jury trial on all issues so triable; and

f.    All other appropriate relief.

Dated this 29th day of September, 2020.


                                        s/ Candice L. Fields

                                        Candice L. Fields
                                        CANDICE FIELDS LAW
                                        Counsel for Online Merchants Guild