Aaron K. Block (*pro hac vice*)
THE BLOCK FIRM LLC
4200 Northside Parkway NW
Building 1, Suite 200
Atlanta, Georgia 30327
404-997-8419
aaron@blockfirmllc.com

Paul S. Rafelson (*pro hac vice*)
RAFELSON SCHICK, PLLC
2255 Glades Road, Suite 319
Boca Raton, Florida 33431
833-326-6529
paul@frsattorneys.com

Candice Fields (SBN 172174)
CANDICE FIELDS LAW
520 Capitol Mall, Suite 750
Sacramento, California 95814
916-414-8050
cfields@candicefieldslaw.com

Counsel for Plaintiff the Online Merchants Guild

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| **ONLINE MERCHANTS GUILD,** | **Case No. 2:20-cv-01952-MCE-DB** |
| **Plaintiff,** | |
| **vs.** | |
| **NICOLAS MADUROS, DIRECTOR,** | **THE ONLINE MERCHANTS GUILD'S** |
| **CALIFORNIA DEPARTMENT OF TAX &** | **MOTION FOR PRELIMINARY** |
| **FEE ADMINISTRATION,** | **INJUNCTION** |
| **Defendant.** | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................... i

TABLE OF AUTHORITIES ................................................. iii

NOTICE OF MOTION .................................................... vii

MOTION FOR PRELIMINARY INJUNCTION ................................... vii

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

   I.   INTRODUCTORY STATEMENT ........................................... 1

   II. FACTUAL BACKGROUND ............................................... 2

   III. PRELIMINARY INJUNCTION STANDARD .............................. 7

   IV. ARGUMENT ........................................................ 7

      a.   This Court has jurisdiction to hear this case. ............... 7

          1.   The TIA does not apply because the Guild's challenges to CDTFA's registration demands, threats, and *Wayfair*-override policy would not "stop" tax "assessment, levy, or collection." ........................ 8

          2.   The TIA does not bar the Guild's claims as to CDTFA's use-tax demands because California does not "a plain, speedy and efficient remedy" to challenge those demands. ................................ 9

          3.   California offers no remedy to prevent a violation of the Internet Tax Freedom Act, so the TIA does not bar the ITFA claims. .............................. 11

          4.   California's system is inadequate to resolve the Guild's claims. ............................................ 12

          5.   CDTFA cannot invoke the comity doctrine. ................... 14

      b.   The Online Merchants Guild is likely to succeed on the merits. ............... 14

1               1.     The Due Process Clause bars CDTFA from imposing

2                         tax obligations on the Guild's non-resident members................... 14

3               2.     CDTFA is violating the Internet Tax Freedom Act by

4                         treating e-commerce differently than brick-and-mortar

5                         commerce. ...................................................................... 17

6               3.     CTFA's retroactive tax demands are unlawful. .............................. 18

7               4.     The following conduct by CDTFA is unlawful. .............................. 19

8       c.     The other preliminary injunction factors favor injunctive relief................. 20

9   V.  CONCLUSION ................................................................. 20

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITIES

## Cases

*A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889 (7th Cir. 2020) ............................... 10, 14

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ......................... 7

*Am. Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749 (9th Cir. 2019)..... 7, 20

*City of Chicago v. StubHub!, Inc.*, 624 F.3d 363 (7th Cir. 2010) ................................... 11

*Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015)........................................................... 8

*Ga. R.R. & Banking Co. v. Redwine*, 342 U.S. 299 (1952) ............................................ 13

*IBM Personal Pension Plan v. San Francisco*, 131 Cal. App. 4th 1291 (2005) ............. 11

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ....................................................... 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .................. 8

*Lynn v. West*, 134 F.3d 582 (4th Cir. 1998) .................................................................. 9

*Miller Bros. Co. v. Maryland*, 347 U.S. 340 (1954)...................................................... 15

*Nat'l Private Truck Council v. Okla. Tax. Comm'n*, 515 U.S. 582 (1995)....................... 12

*New Cingular Wireless PCS LLC v. Comm'r of Rev.*, 154 N.E.3d 947 (Mass. Ct. App. 2020).......................................................................................................................... 11

*Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54 (Ill. 2013) ................................ 11, 17

*Quarty v. U.S.*, 170 F.3d 961, 969 (9th Cir. 1999) ....................................................... 18

*Quill Corp. v. North Dakota*, 504 U.S. 298 (1992)......................................................... 15

*Retirement Fund Trust v. Franchise Tax Bd.*, 909 F.2d 1266 (9th Cir. 1990) ............... 10

*U.S. Steel Corp. v. Multistate Tax Comm'n*, 367 F. Supp. 107 (S.D.N.Y. 1973)........... 13

*U.S. v. Carlton*, 512 U.S. 26 (1994) ........................................................................... 18

*U.S. v. Ubaldo-Figueroa*, 347 F.3d 718 (9th Cir. 2003) ............................................... 18

*Walden v. Fiore*, 571 U.S. 291 (2014)...........................................................................15

## Constitutional Provisions, Statutes, and Regulations

18 CCR 1569 ................................................................................................................3

28 U.S.C. § 1341.......................................................................................................8, 13

Cal. Const. art. XIII § 32 ............................................................................................11

Cal. RTC § 6014-15 ......................................................................................................3

Cal. RTC § 6014–15 ......................................................................................................3

Cal. RTC § 6203(c)(4) ..................................................................................................6

Cal. RTC § 6397 .........................................................................................................11

Cal. RTC § 6931 .........................................................................................................11

Cal. RTC § 7262(a)(1)..................................................................................................6

Internet Tax Freedom Act, codified at 47 U.S.C. § 151, Note.................................11, 17

## Rules

FRCP 65 ........................................................................................................................vi

LR 231............................................................................................................................vi

## Legislative Materials

H.R. Rep. 113-350 (2014)...........................................................................................11

U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust,
    Commercial and Administrative Law, "Investigation of Competition in Digital Markets:
    Majority Staff Report and Recommendations" ..............................................................3

## Websites

CDTFA, "Form 38-A (7-19)," https://cdtfa.ca.gov/formspubs/forms.htm ..........................6

CDTFA, "Fulfillment Centers," https://www.cdtfa.ca.gov/industry/fulfillment-centers.htm 6

CDTFA, "Publication 114, Consignment Sales,"

   https://www.cdtfa.ca.gov/formspubs/pub114/#Sales .................................................. 18

CDTFA, "Tax Guide for Marketplace Facilitator Act, FAQs,"

   https://cdtfa.ca.gov/industry/MPFAct.htm#note3.......................................................... 7

CDTFA, "Tax Guide for Marketplace Facilitator Act,"

   https://www.cdtfa.ca.gov/industry/MPFAct.htm. ............................................................ 4

CDTFA, "Use Tax Collection Requirements Based on Sales into California Due to the

   *Wayfair* Decision, Overview," https://www.cdtfa.ca.gov/industry/wayfair.htm ............... 6

CDTFA, Reg. 1569, "Consignees and Lienors of Tangible Personal Property for Sale,"

   https://www.cdtfa.ca.gov/lawguides/vol1/sutr/1569.html ............................................. 17

Declan McCullagh, "Amazon Shoppers Will Squeeze Through California Tax Loophole,"

   *CNET*, https://www.cnet.com/news/amazon-shoppers-will-squeeze-through-calif-tax-

   loophole/............................................................................................................................ 3

Eugene Kim, "Some Amazon Sellers Can Avoid Paying Back Sales Taxes through a

   Temporary Amnesty Program," *CNBC* (August 3, 2017),

   https://www.cnbc.com/2017/08/03/some-amazon-sellers-can-avoid-paying- back-

   sales-taxes-through-a-temporary-amnesty-program.html ........................................... 14

Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax

   Bill*," The Philadelphia Inquirer* (November 5, 2019),

   https://www.inquirer.com/business/california-sales-tax-amazon-seller-philadelphia-

   business-20191105.html ......................................................................................... 4, 5

Matt Day, "Amazon Pulled Into Another Sales-Tax Fight as States Go After Third-Party

   Sellers on Its Marketplace," *The Seattle Times* (November 8, 2017),

https://www.seattletimes.com/business/amazon/amazon-pulled-into-another- sales-tax-fight-as-states-go-after-third-party-sellers/ ............................................................ 14

Multistate Tax Comm'n, "FAQs—Online Marketplace Sellers Voluntary Disclosure Initiative," http://www.mtc.gov/Nexus-Program/Online-Marketplace-Seller-Initiative/FAQ.................................................................................................................. 14

Seller Essentials, "Amazon Warehouse Locations," https://selleressentials.com/amazon/amazon-fulfillment-center- locations/. ................. 1

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 25, 2021 or as soon thereafter as may be convenient for the Court, Plaintiff Online Merchants Guild will bring for hearing its Motion for Preliminary Injunction, subject to the Court's Standard Information and the Initial Pretrial Scheduling Order dated September 30, 2020 (Docket No. 4).

**MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65 and Local Rule 231, Plaintiff the Online Merchants Guild respectfully requests that the Court issue a preliminary injunction preventing Defendant Nicolas Maduros, Director of the California Department of Tax and Fee Administration, from further violating the constitutional and statutory rights of the Guild and its members during the pendency of this litigation, as set forth in the attached Memorandum of Points and Authorities. A proposed order to that effect is attached hereto.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTORY STATEMENT**

The Online Merchants Guild requests that the Court enjoin Defendant Maduros ("CDTFA") from violating the Guild's members' rights while this litigation proceeds.

For nearly a decade, while the state was courting Amazon to build facilities like "HQ2" in the state, CDTFA let Amazon refuse to collect sales taxes in its store. The result was billions in foregone revenue. Now CDTFA has demanded that Amazon's suppliers—small, politically-weak non-residents—pay Amazon's debts. Many have given in to CDTFA's threats of felony jail time if they do not cooperate; others live in fear. As California Treasurer Fiona Ma has stated, CDTFA's actions are "unlawful, unconstitutional, and impractical," and should cease.[1]

CDTFA's actions are contrary to the law. The Due Process Clause prohibits CDTFA from regulating or taxing non-residents who do not deliberately create minimum contacts with the state. Non-resident upstream suppliers do not deliberately create such contacts with the state when third-party retailers decide to store goods in California. Yet that is what CDTFA is claiming here. The Guild represents small merchants who source goods for Amazon's online store.[2] Amazon sometimes chooses to store some such goods in Amazon's California "fulfillment centers," as opposed to elsewhere among the 180+ locations Amazon has around North America.[3] Amazon's choices may give CDTFA personal jurisdiction over that company, but not the Guild's non-resident members. And without personal jurisdiction over them, CDTFA cannot insist members pay Amazon's back taxes or submit to the agency's other demands.

---

[1] March 8, 2019 Letter from Treasurer Ma to Governor Newsom (Block Dec. Exhibit A).
[2] Rafelson Dec. ¶ 5 (Block Dec. Ex. B).
[3] *Id*. ¶¶ 22–25; Seller Essentials, "Amazon Warehouse Locations," https://selleressentials.com/amazon/amazon-fulfillment-center- locations/.

CDTFA's actions also violate the Internet Tax Freedom Act, which prohibits states from treating e-commerce differently than brick-and-mortar commerce for tax purposes. Amazon's FBA program uses a consignment model: Amazon takes custody of goods, handles sales, and passes goods to purchasers. In the brick-and-mortar context, CDTFA requires consignment shops to collect taxes. In the e-commerce context, the agency does the opposite. That disparate treatment violates the ITFA.

CDTFA's enforcement posture is also unlawfully retroactive. The agency cannot change the "rules" to demand surprise taxes from the Guild's members back to 2012—especially since the agency itself dug the tax-collection hole.

Those are not CDTFA's only violations of the rule of law.[4] But on their own they justify a preliminary injunction to prevent further injury while this case proceeds.

## II.    FACTUAL BACKGROUND

This case is about enforcing federal limitations on state authority over participants in the interstate economy. The context is CDTFA's treatment of Amazon's Fulfilled by Amazon (FBA) program. FBA comprises the vast majority of Amazon's sales.[5] Amazon uses third-party suppliers like the Guild's members to source goods for Amazon's store.[6] Amazon takes custody of the goods, stores them in its warehouses around the country, offers the goods in its store, fulfills customer orders from those warehouses, and handles payment—with Amazon taking most of the profit.[7] Importantly here, Amazon—not the Guild's members—dictates where to store goods.[8]

---

[4] *See generally* Complaint (Docket No. 1).
[5] Rafelson Dec. ¶ 5 (Block Dec. Ex. B).
[6] *Id.*
[7] *Id.* ¶¶ 5–10.
[8] Brian Freifelder Dec. ¶ 7 (Block Dec. Ex. C); Denise Rasbid Dec. ¶ 8 (Block Dec. Ex. D).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

For most of the last decade, Amazon refused to collect taxes on the vast majority of goods sold in its store.[9] Amazon's strategy enabled the company to charge artificially-lower prices and grow into the giant it is today. As the House Antitrust Subcommittee concluded after a sixteen-month investigation, "Amazon expanded its market power through avoiding taxes [and] extracting state subsidies."[10]

Back in in 2012, CDTFA was actually poised to make Amazon collect taxes. After all, the agency explained to the media, "Amazon has possession of the property and the power to transfer title to the consumer. Since Amazon is handling the merchandise and all aspects of the sale, [CDTFA] would consider them the retailer, and Amazon would have to collect tax on the transaction."[11] But after Amazon got wind from a reporter in the afternoon, the agency flipped, emailing the reporter "[l]ate last night" with a "significant departure" from the agency's original position.[12]

According to Treasurer Ma, the "[n]umber one" reason CDTFA gave Amazon a pass was that "the governor's office has been trying to woo Amazon into putting a headquarters here. I've been pushing [for Amazon to collect taxes] and they haven't wanted to do anything up front."[13] Treasurer Ma has investigated this issue for years. As the chair of the Board of Equalization (which later became CDTFA),[14] she met with Amazon and found that the company was not collecting taxes even though "Amazon

---

[9] *But see, e.g.,* Cal. RTC § 6014–15; 18 CCR 1569 ("A person who has possession of property owned by another, and also the power to cause title to that property to be transferred to a third person without any further action on the part of its owner, and who exercises such power, is a retailer when the party to whom title is transferred is a consumer. Tax applies to his gross receipts from such a sale.").

[10] U.S. House of Representatives, Committee on the Judiciary, Subcommittee on Antitrust, Commercial and Administrative Law, "Investigation of Competition in Digital Markets: Majority Staff Report and Recommendations" at 261, https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf.

[11] September 10, 2012 Email from Venus Stromberg on behalf of Deputy Director Garza (CDTFA) to Declan McCullagh (*CNET*) (Block Dec. Exhibit E).

[12] Declan McCullagh, "Amazon Shoppers Will Squeeze Through California Tax Loophole," *CNET*, https://www.cnet.com/news/amazon-shoppers-will-squeeze-through-calif-tax-loophole/.

[13] *Id.*

[14] *See* Complaint at 5 (documenting how the "Scandal-Plagued" BOE became CDTFA).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

employs 30k+ employees in California" and has multiple "fulfillment centers" in the state.[15] She urged state officials and Congress to address Amazon's tax practices and CDTFA's overreach.[16]

As of late 2019, Amazon finally agreed to begin collecting taxes and eased the passage of so-called marketplace facilitator legislation.[17] So much for the future, but billions in damage was already done—California lost "sales tax revenues of $431 million" in just one year.[18] So is CDTFA finally going after Amazon?

No. After all, Amazon still has a lot to offer. Instead the agency has targeted "hundreds of thousands of third-party merchants on Amazon who were informed by [CDTFA] that *they* should have been collecting taxes on sales to California residents as far back as 2012."[19] Using names supplied by Amazon, CDTFA has been contacting Guild members and demanding that they register with the agency and pay Amazon's back taxes. And since Guild members do not have the money Amazon did not collect, CDTFA wants the money to come out of Guild members' pockets.[20]

The agency has threatened Guild members that if they "choose not to voluntarily [*sic*] comply to obtain a sellers permit," they could be "guilty of a felony," fined thousands of dollars, and "imprison[ed] for 16 months, two years, or three years."[21] CDTFA agents insist on "set[ting] up an appointment with you for registration," while simultaneously warning that that if the member declines, "you can be prosecuted and

_____

[15] Treasurer Ma Letter to Bosler, Cabinet Secretary, Office of Governor Brown at 1 (Block Dec. Ex. F).
[16] *Id.*; Treasurer Ma Letter to Governor Newsom (Block Dec. Exhibit A); Treasurer Ma Written Testimony to Congress (Block Dec. Ex. G). As Treasurer Ma explained, she was instrumental in exposing the scandals at the BOE. *Id.* at 1.
[17] CDTFA, "Tax Guide for Marketplace Facilitator Act," https://www.cdtfa.ca.gov/industry/MPFAct.htm.
[18] Treasurer Ma Letter to Bosler (Block Dec. Ex. F).
[19] Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax Bill," *The Philadelphia Inquirer* (November 5, 2019), https://www.inquirer.com/business/california-sales-tax-amazon-seller-philadelphia-business-20191105.html (emphasis added).
[20] Mindy Wright Dec. ¶ 6 (Block Dec. Ex. H).
[21] CDTFA Correspondence to Merchants at 1 (Block Dec. Ex. I).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

1     billed."[22] CDTFA may also seize funds from bank accounts or merchants' Amazon

2     accounts (evading due process protections on property seizure).[23] Guild member

3     Denise Rasbid explains that "[e]very day I hold my breath while I check the mail, fearful

4     that CDTFA will send me more threatening messages or seize my bank account."[24]

5          When merchants register with CDTFA, the agency demands retroactive payment

6     as far back as 2012.[25] "Fearful of CDTFA's threats," Guild member Arnold Norman

7     registered, "paid over $4,000 for 2019 sales taxes," and then CDTFA demanded "more

8     than $20,000" more for prior years.[26] The agency sent Guild member Brian Freifelder a

9     demand for $1.6 million for a six-month period, which exceeded the plausible taxes on

10    "every sale [he has] ever done" in California—and the other 49 states.[27] After Brian

11    pointed out the amount was "absurd," the agency reduced its demand to a mere

12    "$25,000 for just one quarter."[28] Many other Guild members have received demands,

13    which create financial hardship and *in terrorem* negotiating leverage.[29]

14          Members are "distraught and frightened" and unsure what to do: "[w]e cannot

15    afford to pay the money CDTFA is seeking, and we also cannot pay to challenge

16    CDTFA because that would require paying the money first and hoping to get it back in

17    several years after spending thousands we don't have on legal fees."[30] Thousands is an

18    understatement—litigation costs would likely be in the hundreds of thousands and out of

19

20

21    [22] *Id.* at 3.

     [23] Complaint ¶ 54.

22    [24] Rasbid Dec. ¶ 11 (Block Dec. Ex. D).

     [25] CDTFA Correspondence to Merchants at 17 ("Your company is required to file Sales and Use Tax

23    returns on a Quarterly basis with a start date of 9/5/2012.") (Block Dec. Ex. I); *id.* at 6 (2019 email warning
     that CDTFA may reach back "up to eight years").

24    [26] Arnold Norman Dec. ¶¶ 6; 8 (Block Dec. Ex. J). After this case was filed, CDTFA increased its demand
     by tens of thousands by seeking taxes even further back in time.

25    [27] Harold Brubaker, "California Hits Philly-Area Amazon Seller with $1.6 Million Sales-Tax Bill," *The
     Philadelphia Inquirer* (November 5, 2019), https://www.inquirer.com/business/california-sales-tax-

26    amazon-seller-philadelphia-business-20191105.html.

     [28] Freifelder Dec. ¶¶ 5–6 (Block Dec. Ex. C).

27    [29] Rafelson Dec. ¶ 22–27 (Block Dec. Ex. B); Rasbid Dec. ¶ 11 (Block Dec. Ex. D).
     [30] *Id.*

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

reach for almost any individual. CDTFA has chilled members' interstate economic activity and is jeopardizing their businesses.[31]

The Online Merchants Guild now seeks to enjoin the following four policies:

**Registration**: CDTFA's policy is that "[i]f you are an out-of-state seller that uses a California fulfillment center to store your inventory for delivery to consumers in California, you are also required to register with the CDTFA and file sales and use tax returns."[32]

**Penalty Threats**: CDTFA's position is that non-residents who do not register as tax collection agents for the state can be fined and imprisoned.[33]

**Use Tax Collection**: CDTFA wants Guild members to pay Amazon's uncollected taxes out of their pockets.[34]

***Wayfair* Override**: Under *South Dakota v. Wayfair*, 138 S. Ct. 2080 (2018), states cannot tax online sales by non-residents below a certain threshold. Under California's statutory *Wayfair* threshold, non-residents with less than $500,000 in sales to California are not obligated to collect use taxes.[35] But according to

_____

[31] Rasbid Dec. ¶ 12 (Block Dec. Ex. D); Wright Dec. ¶ 6 (Block Dec. Ex. H); Jennifer Jenson Dec. ¶ 8 (Block Dec. Ex. K); Freifelder Dec. ¶ 9 (Block Dec. Ex. C).
[32] CDTFA, "Fulfillment Centers," https://www.cdtfa.ca.gov/industry/fulfillment-centers.htm; *see also* CDTFA, "Form 38-A (7-19)," https://cdtfa.ca.gov/formspubs/forms.htm (claiming nexus over non-residents who "were engaged in business in this state solely because you used a marketplace facilitator . . . to facilitate sales for delivery in this state and the marketplace facilitator stored your inventory in this state").
[33] CDTFA Correspondence to Merchants (Block Dec. Ex. I).
[34] Norman Dec. ¶ 8 (Block Dec. Ex. J).
[35] Cal. RTC § 6203(c)(4) (imposing the threshold as to state sales and use tax); Cal. RTC § 7262(a)(1) (same as to district sales and use tax); CDTFA, "Use Tax Collection Requirements Based on Sales into California Due to the *Wayfair* Decision, Overview," https://www.cdtfa.ca.gov/industry/wayfair.htm (explaining that AB 147 amended those provisions to impose a $500,000 *Wayfair* threshold before non-residents would have to register and collect tax). *Cf. Wayfair*, 138 S. Ct. at 2099 (explaining that, for Commerce Clause purposes, dollar thresholds limit states' reach to larger businesses able to shoulder the compliance burden).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

CDTFA, merchants whose goods Amazon stores in California warehouses are ineligible for *Wayfair*'s protections.[36]

### III.   PRELIMINARY INJUNCTION STANDARD

To obtain a preliminary injunction, the plaintiff must establish "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Am. Bev. Ass'n v. City & County of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (*en banc*). Under the "sliding scale test for preliminary injunctions," the plaintiff need only raise "serious questions going to the merits" when "the balance of hardships tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

### IV.   ARGUMENT

The Guild satisfies the preliminary-injunction standard because CDTFA's positions violate several federal laws. The Guild and its members have and will continue to suffer irreparable harm from the agency's violation of their legal rights, to say nothing of the destruction of their livelihoods. The equities and the public interest favor an injunction because vindicating civil rights, and preserving the interstate economy and small businesses from government overreach, are in the public interest.

#### a.  This Court has jurisdiction to hear this case.

Before turning to the merits, the Guild will address the Court's jurisdiction. Neither the Tax Injunction Act nor the comity doctrine strips this Court of jurisdiction.

---

[36] CDTFA, "Tax Guide for Marketplace Facilitator Act, FAQs," https://cdtfa.ca.gov/industry/MPFAct.htm#note3 ("I am located outside of California and beginning October 1, 2019, most of my sales will be facilitated by a marketplace facilitator who is registered as a retailer with the CDTFA. However, I also make a few sales of tangible merchandise for delivery in California through my own website. . . . Can I close my account? No, you are engaged in business in California because you have a physical presence in this state (inventory) and you are making retail sales of tangible merchandise that are not facilitated by a marketplace facilitator.").

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

**1. The TIA does not apply because the Guild's challenges to CDTFA's registration demands, threats, and *Wayfair*-override policy would not "stop" tax "assessment, levy, or collection."**

As a foundational proposition, federal courts have "virtually unflagging" jurisdiction to hear federal-question cases. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The Tax Injunction Act is a limited restriction on that jurisdiction: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The TIA does not apply every time taxes are involved. Rather, the act strips jurisdiction in a claim-specific way. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 11 (2015). The Supreme Court uses a precise, textualist approach to determine whether specific claims implicate the TIA. *See id.*; *id*. at 12 n.1 (distinguishing between claims). "Assessment, levy, and collection" are "discrete phases of the taxation process." *Id*. at 8. And the TIA applies only where an injunction would actually "stop" those phases (and the other TIA requirements are satisfied). *Id*. at 6. By contrast, the TIA does not bar challenges to other aspects of an overall tax system—even where an injunction might secondarily "inhibit" assessment, levy, or collection. *Id*. at 14.

*Direct Marketing Association* squarely permits the Guild's challenges to CDTFA's registration demands, penalty threats, and *Wayfair*-override policy. *First*, the TIA does not apply to CDTFA's registration demands, because those are not acts of assessment, levy, or collection. "Enforcement of [] notice and reporting requirements may improve [a State's] ability to assess and ultimately collect its sales and use taxes from consumers, but the TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes. Such a rule would be inconsistent not only with the text of the statute, but also with [the Court's] rule favoring clear boundaries in the interpretation of jurisdictional statutes." *Direct Mktg. Ass'n*, 575 U.S. at 11. Thus, the TIA does not apply to

information-gathering requirements, like laws requiring retailers to "send a statement to the [tax authority] listing the names" and purchasing history of in-state customers, which the state would then use to collect taxes. *Id*. at 6. California's registration demand, like the reporting demand in *Direct Marketing Association*, is outside the TIA.

*Second*, the TIA does not bar the Guild's challenge to CDTFA's threatened penalties because those are not "acts of assessment, levy, and collection themselves." *Id*. at 11. In addition, a "criminal penalty, however labeled, is not a 'tax under State law' for Tax Injunction Act purposes." *Lynn v. West*, 134 F.3d 582, 594 (4th Cir. 1998) (citing various authorities). That is because a "criminal penalty raises different constitutional concerns that outweigh the state's interest in the orderly administration of taxes." *Id*. at 594 n.13. Hence, "no court has held that a criminal penalty, although labeled as a tax, falls within the ambit of the Tax Injunction Act." *Id*.

*Third*, CDTFA's *Wayfair*-override policy is outside the scope of the TIA because the policy is not an act of assessment, levy, or collection as such. Rather, it is a means of classifying individuals to determine whether, in the state's view, they are protected by federal rights. Tax-collection implications may flow from the classification, but secondary effects on tax collection do not trigger the TIA. 575 U.S. at 11.

Thus, the TIA does not strip the Court of jurisdiction over the Guild's challenges to CDTFA's registration, penalty, and *Wayfair*-override policies.

### 2. The TIA does not bar the Guild's claims as to CDTFA's use-tax demands because California does not "a plain, speedy and efficient remedy" to challenge those demands.

Congress did not intend to leave plaintiffs without any remedy for constitutional violations, so the TIA conditions jurisdiction-stripping on the existence of a "plain, speedy and efficient remedy" in state court. 28 U.S.C. § 1341. Thus, when litigants "cannot make their [constitutional] case in state court, [they] have no 'remedy' at all for their claims—never mind a 'plain, speedy and efficient' one—and the [TIA] does not bar

their federal suit." *A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020). California does not offer the Guild and its members a remedy as to the use taxes in question, so the TIA allows the Guild to challenge those taxes in this Court.

The Ninth Circuit held the TIA was inapplicable in *Direct Marketing Association v. Bennett*, 916 F.2d 1451, 1454 (9th Cir. 1990), because of California's taxpayer-standing rules. Like this case, *Bennett* involved California use taxes, not sales taxes. Sales taxes are collected by resident retailers, whom California treats as the taxpayer with standing. Out-of-state merchants, by contrast, deal with use taxes—and California considers *consumers* the taxpayer with exclusive standing. *Id*. Since non-residents would lack standing for a challenge in state court, the TIA allowed their claims in federal court. *Id*.

So too here. *Bennett* means that the Guild may challenge California's attempt to impose use-tax obligations on its non-resident members. 916 F.2d at 1454; *see also Retirement Fund Trust v. Franchise Tax Bd.*, 909 F.2d 1266, 1272 (9th Cir. 1990) ("Because California law denies the trusts a judicial forum to challenge actions of the [Franchise Tax] Board, it does not satisfy the requirements of the Tax Injunction Act.").

*Bennett* further held that the TIA does not bar challenges to tax-collection laws when "whether or not the state will issue a determination is a matter of speculation." 916 F.2d at 1457. Under those circumstances, "the mere possibility" of a determination "does not render *certain* the availability of a remedy," which "is an important factor in establishing that a state court remedy is 'plain'" *Id*. Many of the Guild's members have not received "determinations" but fear the effects of CDTFA's policies all the same.[37] *Bennett* allows the Guild to bring claims on their behalf.

Other features of California law also preclude application of the TIA. Under California law, non-taxpayers like the Guild lack standing to challenge taxes as a

---

[37] *See, e.g.*, Rafelson Dec. ¶¶ 22; 25 (Block Dec. Ex. B).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

general matter. Cal. RTC § 6397 (barring standing "by any person other than the person who paid the amount"); *IBM Personal Pension Plan v. San Francisco*, 131 Cal. App. 4th 1291 (2005) (same). Further, California law provides that "[n]o legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax." Cal. Const. Art. XIII § 32; Cal. RTC § 6931.

With no remedy to challenge the use taxes in state court, the TIA does not bar the Guild's challenges in this Court.[38]

### 3. California offers no remedy to prevent a violation of the Internet Tax Freedom Act, so the TIA does not bar the ITFA claims.

The Guild's claims under the Internet Tax Freedom Act are not subject to the TIA for an additional reason: California gives the Guild and its members no means to vindicate their Internet Tax Freedom Act interests in a state forum.

The ITFA preempts certain state tax laws that uniquely burden the interstate e-commerce marketplace, which is of paramount federal interest. *See, e.g.*, *Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54, 57 (Ill. 2013) (recognizing preemptive force of the ITFA); *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 366 (7th Cir. 2010) (same); *New Cingular Wireless PCS LLC v. Comm'r of Rev.*, 154 N.E.3d 947 (Mass. Ct. App. 2020) (same); *see also* H.R. Rep. 113-350 (2014) (describing history and purpose of Congress's "ban" on discriminatory taxes). Under the ITFA, "[n]o State or political subdivision thereof may impose . . . discriminatory taxes on electronic commerce." *See* Internet Tax Freedom Act § 1101(a), codified at 47 U.S.C. § 151, Note. As explained below, CDTFA is imposing a discriminatory tax.

---

[38] The foregoing arguments would also permit jurisdiction over the Guild's other claims if they were subject to the TIA, which they are not.

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

Congress intended the ITFA to operate in real-time to prevent disruption of the interstate economy. *See id.* at Sec. 1101(a) (preempting states from "impos[ing]" discriminatory taxes in the first place); Sec. 1101(b) (contemplating that the ITFA would "modify, impair, or supersede" state tax collection). The ITFA has to stop discriminatory taxes before they are imposed, or else the operation of those taxes would frustrate Congress's judgment about how best to enable national e-commerce.

California offers the Guild and its members no remedy to stop CDTFA's discriminatory use-tax demands in real-time. Even taxpayers who *do* have standing under California tax law must wind their way through the "pay up or shut up" system. *Andal v. City of Stockton*, 137 Cal. App. 4th 86, 90 (2006). Taxpayers have to undertake an administrative process, pay the disputed amount, and file a refund action in state court—a procedure that takes years. By that time, the state would have long been able to "impose" a tax-collection obligation barred by the ITFA, and it will not be possible to correct the economic disruption by a mere return of the taxes at issue. The problem is even worse for the Guild and its members, since they cannot even pursue that process.

Because California prevents the Guild its members from vindicating their ITFA interests in state court, the Guild can pursue its ITFA claims in this Court.

### 4.  California's system is inadequate to resolve the Guild's claims.

The TIA primarily channels individualized taxpayer litigation toward adequate state forums. This case involves very different claims—they involve federal interests in the national economy, many affected parties, and multi-jurisdictional conduct. Under similar circumstances, the courts have recognized that state remedies are inadequate for resolving the claims, such that the TIA does not strip federal jurisdiction.

The Supreme Court has explained that state remedies can be "inadequate" based on specific features of the litigation. *Nat'l Private Truck Council v. Okla. Tax. Comm'n*, 515 U.S. 582, 591 n.6 (1995). Among such "extraordinary circumstances" are situations where there is a "real risk of numerous suits between the same parties,

involving the same issues of law or fact." *Id*. (cleaned up); *see also Ga. R.R. & Banking Co. v. Redwine*, 342 U.S. 299, 303 (1952) (state remedies inadequate because challenges would involve hundreds of separate actions). State remedies are also inadequate in situations where "state tax authorities continue to impose" a tax whose unconstitutionality is not in doubt. *Id*. And in the long-running litigation over the constitutionality of the Multistate Tax Commission, the court found the "plaintiffs' only effective remedy lies in the federal courts" because of the multi-party, interstate nature of the dispute. *U.S. Steel Corp. v. Multistate Tax Comm'n*, 367 F. Supp. 107, 115–117 (S.D.N.Y. 1973), *judgment aff'd*, 434 U.S. 452 (1978).

Those cases stand for the proposition that sometimes only a federal forum will provide the necessary "plain, speedy and efficient remedy" for certain claims. 28 U.S.C. § 1341. This case involves such claims. The Guild's claims affect its hundreds of members and thousands of similarly-situated merchants operating on the nation's dominant e-commerce platform. The sums at issue are meaningful to the Guild's members, but are also classic "negative-value" claims that are economically irrational to litigate in California's "pay-to-play" system—even for those to whom the state grants standing. To the Guild's knowledge, no affected merchant has actually pursued that route. Moreover, the federal interests at stake need group-wide vindication in real-time, not individualized and insufficient repair in years. California may be the most assertive, but is by no means the only, state taking the position that it can tax non-residents based on Amazon's inventory-movement choices.[39] To take just one example, Washington is targeting Jennifer Jenson's business because Amazon instructed a consumer to return a single book to an Amazon facility in the state.[40] Many states use the Multistate Tax

---

[39] *See, e.g.*, Jenson Dec. ¶¶ 5-6 (Block Dec. Ex. K).
[40] *Id*.

1  Commission to urge that position.[41] Given the complexity and interests at stake, this

2  Court, not the state's system, is where the Guild's remedy lies.

3  **5.  CDTFA cannot invoke the comity doctrine.**

4  Lastly, CDTFA cannot invoke the prudential comity doctrine. The "'plain,

5  adequate, and complete' requirement in the comity analysis is identical to the 'plain,

6  speedy and efficient' requirement under the Tax Injunction Act. Since the Act does not

7  bar [this Court] from exercising jurisdiction over this challenge, neither does the principle

8  of comity." *A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020); *accord*

9  *Winn v. Killian*, 307 F.3d 1011 (9th Cir. 2002).

10  **b.  The Online Merchants Guild is likely to succeed on the merits.**

11  CDTFA's treatment of the Guild's members violates the Due Process Clause, the

12  Internet Tax Freedom Act, and various prohibitions on retroactive tax laws.

13  **1.  The Due Process Clause bars CDTFA from imposing tax**

14  **obligations on the Guild's non-resident members.**

15  The Guild's personal jurisdiction argument proceeds as follows: (1) CDTFA

16  cannot impose tax obligations on the Guild's non-resident members unless they create

17  constitutionally-sufficient contacts with California; (2) Amazon's decision to store goods

18  in California did not create such contacts on behalf of the Guild's members; so (3)

19  CDTFA cannot impose the challenged obligations on the Guild's members based on

20  their mere participation in FBA.

21

22

23  _____

24  [41] *See* Multistate Tax Comm'n, "FAQs—Online Marketplace Sellers Voluntary Disclosure Initiative," http://www.mtc.gov/Nexus-Program/Online-Marketplace-Seller-Initiative/FAQ; Eugene Kim, "Some Amazon Sellers Can Avoid Paying Back Sales Taxes through a Temporary Amnesty Program," *CNBC*

25  (August 3, 2017), https://www.cnbc.com/2017/08/03/some-amazon-sellers-can-avoid-paying- back-sales-taxes-through-a-temporary-amnesty-program.html (describing the multi-state nature of the issue); Matt Day, "Amazon Pulled Into Another Sales-Tax Fight as States Go After Third-Party Sellers on Its

26  Marketplace," *The Seattle Times* (November 8, 2017),

27  https://www.seattletimes.com/business/amazon/amazon-pulled-into-another- sales-tax-fight-as-states-go-after-third-party-sellers/ (similar).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

The Due Process Clause constrains all government power in a free society, and state tax authorities are like other state officials: they cannot regulate non-residents over whom the state lacks jurisdiction. The Supreme Court has long enforced "the due process requirement that there be 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.'" *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2093 (2018) (quoting *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45 (1954)). Absent personal jurisdiction, "the imposition of a tax would be *ultra vires* and void." *Miller Bros.*, 347 U.S. at 342. It follows that "the seizure of property by the state under pretext of taxation when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law." *Id*.

"Building on the seminal case of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), [the Court has] framed the relevant inquiry as whether a defendant had minimum contacts with the jurisdiction such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Quill Corp. v. North Dakota*, 504 U.S. 298, 307 (1992), *separate holding overruled by Wayfair*, 138 U.S. at 2099; *accord, e.g.*, *Wayfair*, 138 S. Ct. at 2093 (invoking the same due process standard).

The question, then, is whether the Guild's members created sufficient contacts with California via Amazon's choices. The answer is no. CDTFA's jurisdictional position is one that the courts have rejected for decades. According to CDTFA, Amazon's unilateral decision to store goods in California gives the agency jurisdiction over third-party merchants who earlier supplied those goods to Amazon. But the Supreme Court has repeatedly held that the "unilateral activity of a third party [] cannot satisfy the requirement of contact with the forum State" necessary to establish jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 291 (2014).

Rather, the controlling inquiry is whether the putative subject of jurisdiction "create[d] a substantial connection with the forum state." *Id*. at 284. There are at least two "related aspects" of the inquiry: "First, the relationship [with the forum] must arise

out of contact that the defendant *himself* creates with the forum state." *Id*. (cleaned up; emphasis in original). "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*.

Non-resident Guild members do not deliberately create meaningful contacts with California by participating in Amazon's FBA program. As Guild member Mindy Wright explains, "[w]e did not ask Amazon to store any of our items in California. In fact, we can't tell Amazon what to do. As a supplier of Amazon's FBA program, we have no control over where Amazon chooses to warehouse products or ship sales."[42]

At most, participation in FBA creates the possibility that Amazon might unilaterally decide to store goods in California, as opposed to elsewhere among Amazon's nearly 200 facilities in North America.[43] Storage happens at Amazon's direction, whether the company orders members to ship goods to a facility near their location and then Amazon subsequently moves the goods to California, or whether Amazon orders members to ship to Amazon in California—from which Amazon could re-ship the goods anywhere.[44] The movement of goods at Amazon's direction is insufficient to create jurisdiction over Guild members because the "placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state." *Holland Am. Line v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 112 (1987)); *accord J.*

---

[42] Wright Dec. ¶ 5 (Block Dec. Ex. H); Norman Dec. ¶ 4 (Block Dec. Ex. J).
[43] *See, e.g.*, Freifelder Dec. ¶ 8 (Block Dec. Ex. C) (describing how Amazon moves goods around its FBA system outside of members' control).
[44] *Id*.

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

*McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) (same); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 560 (9th Cir. 1995) (same). Thus, CDTFA lacks personal jurisdiction over non-resident Guild members based on their FBA participation and cannot impose the challenged policies on them.

### 2. CDTFA is violating the Internet Tax Freedom Act by treating e-commerce differently than brick-and-mortar commerce.

The ITFA requires similar tax treatment between e-commerce and brick-and-mortar enterprises. *See* Internet Tax Freedom Act § 1101(a); § 1105(2), codified at 47 U.S.C. § 151, Note.[45] Relevant here, the ITFA bars states from "impos[ing] an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property . . . accomplished through other means." *Id*. at Sec. 1105(2)(A)(iii). In essence, states must impose the same tax-collection obligations on e-commerce and brick-and-mortar businesses. Laws that do otherwise "are expressly preempted by the ITFA and are therefore void and unenforceable." *Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54, 59–60 (Ill. 2013) (striking down collection obligation that fell on e-commerce but not similar brick-and-mortar merchants).

Amazon FBA uses a supplier-consignment model, with the company taking control of goods, interfacing with customers, and ultimately selling those goods to Amazon's customers.[46] CDTFA has imposed the tax-collection obligation on brick-and-mortar consignment stores for nearly a century.[47] As the agency explains to consignment stores, "You are responsible for . . . paying the sales tax on the retail selling price of consignment sales when you: have possession or control of the item you

---

[45] The ITFA protects both resident and non-resident Guild members.
[46] *See, e.g.*, Norman Dec. ¶ 4 (Block Dec. Ex. J); Rafelson Dec. ¶ 8 (Block. Dec. Ex. B) ¶ 8.
[47] *See* CDTFA, Reg. 1569, "Consignees and Lienors of Tangible Personal Property for Sale," https://www.cdtfa.ca.gov/lawguides/vol1/sutr/1569.html ("effective August 1, 1933").

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

1   are selling, and can transfer ownership or use of the item to the buyer without further

2   action on the part of the owner."[48]

3         By contrast, the agency has a special practice for Amazon—taking the tax-

4   collection obligation from the store and retroactively shifting it to Amazon's upstream

5   suppliers who consign goods to Amazon. The ITFA flatly preempts that discriminatory

6   treatment of the Guild's members.

7               **3.  CTFA's retroactive tax demands are unlawful.**

8         Several doctrines prohibit CDTFA from changing the rules to seek retroactive

9   taxes back to 2012. The "Supreme Court has long disfavored retroactive [laws]"

10   because they are "generally unjust, and "neither accord with sound legislation nor with

11   the fundamental principles of the social compact." *U.S. v. Ubaldo-Figueroa*, 347 F.3d

12   718, 727 (9th Cir. 2003). Retroactive changes in tax liability of more than about a year

13   are unlawful. The Supreme Court's leading retroactive-tax case upheld a change of

14   about that length due to the administrative realities of enacting changes to the tax code.

15   *See U.S. v. Carlton*, 512 U.S. 26 (1994). As Justice O'Connor explained, however,

16   lawmakers rarely seek longer periods of retroactivity and "[i]n every case in which we

17   have upheld a retroactive federal tax statute against a due process challenge . . . the

18   law applied retroactively for only a relatively short period prior to enactment." *Id*. at 38

19   (O'Connor, J., concurring with Scalia, J., and Thomas, J.). By contrast, a period of

20   retroactivity exceeding a year would raise "serious constitutional questions." *Id*. For

21   similar reasons, a lengthy retroactivity period would be an arbitrary taking. *See Quarty*

22   *v. U.S.*, 170 F.3d 961, 969 (9th Cir. 1999). Subsequently, in the Commerce Clause

23   setting, *Wayfair* recognized that "retroactive" changes to state tax laws would likely

24

25             _____

26

27   [48] CDTFA, "Publication 114, Consignment Sales," https://www.cdtfa.ca.gov/formspubs/pub114/#Sales.

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

unduly burden non-resident "small merchants." 138 S. Ct. at 2098–99; *see also id.* at 2091 (explaining that unduly burdensome tax laws are likely invalid).

Here, CDTFA has changed the rules—or at least the operative enforcement posture—to target the Guild's members back to 2012. The agency's efforts apparently began in 2017, before becoming widespread and public in late 2018 and 2019.[49] Whatever limited power the agency might have for some retroactive changes, the agency does not have the power to reach back much of a decade. Especially not when the agency created the dilemma in the first place.

Nor can the agency justify the burden. As Treasurer Ma has explained, it is "inefficient, if not impossible" for CDTFA "to properly audit thousands of FBA retailers around the U.S."; but by collecting taxes from Amazon, "CDTFA would only have to audit one company and compliance would significantly improve."[50] Given the obvious flaws in the agency's policy—and the other concerns described above—CDTFA cannot justify its interference with the interstate marketplace on the basis of valid local concerns the agency could not otherwise address. The Court should hold that CDTFA cannot retroactively target the Guild's members for Amazon's uncollected taxes.

### 4.  The following conduct by CDTFA is unlawful.

Based on the foregoing:

(1) CDTFA lacks the authority to demand that Guild members register with the agency based on Amazon's warehousing choices.

(2) CDTFA lacks the authority to threaten Guild members with prison or other penalties if they refuse the agency's demands.

---

[49] Rafelson Dec. ¶ 22 (Block Dec. Ex. B); CDTFA Correspondence to Merchants at 19 (sent as part of an apparent mass mailing to thousands of merchants) (Block Dec. Ex. I); Amazon Mass-Email to Suppliers (Block Dec. Ex. L).

[50] Treasurer Ma Letter to Bosler at 2 (Block Dec. Ex. F).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

(3) CDTFA lacks the authority to demand that Guild members become use tax collection agents and pay for Amazon's unpaid taxes.

(4) CDTFA lacks the authority to override *Wayfair* and disregard the non-resident nature of the Guild's members based on their participation in FBA.

### c.  The other preliminary injunction factors favor injunctive relief.

Having established far more than the minimal "colorable" constitutional violation necessary for an injunction, the "remaining factors" fall into place. *Am. Bev. Ass'n*, 916 F.3d at 757–58. Constitutional violations are "irreparable injury sufficient to merit the grant of relief." *Id*. at 758 (cleaned up). Next, the "fact that Plaintiffs have raised serious [constitutional] questions compels a finding that the balance of hardships tips sharply in Plaintiffs' favor." *Id*. And finally, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id*.

That isn't just black-letter law, but also black-and-white reality. As Guild member Arnold Norman describes, "[i]f this situation continues, CDTFA may very well put us out of business."[51] Other members are holding off on business investment.[52] Many Guild members have already succumbed to CDTFA's demands; others will have no choice absent an injunction. And CDTFA shows no signs of yielding—after the Guild filed this case, for example, the agency increased its demands to a member who submitted a declaration with the Guild's complaint. An injunction is necessary.

### V.     CONCLUSION

For the foregoing reasons, the Online Merchants Guild respectfully requests that the Court enter the requested injunction. A proposed order is attached hereto.

Respectfully submitted this 18th day of December, 2020.

---

[51] Norman Dec. ¶ 9 (Block Dec. Ex. J).
[52] *See, e.g.*, Freifelder Dec. ¶ 9 (Block Dec. Ex. C); Wright Dec. ¶¶ 3; 6 (Block Dec. Ex. I); Jenson Dec. ¶ 8 (Block Dec. Ex. K).

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

<u>s/ Aaron K. Block</u>
Aaron K. Block (*pro hac vice*)
Paul S. Rafelson (*pro hac vice*)
Candice L. Fields (SBN 172174)

Counsel for Plaintiff
Online Merchants Guild

THE ONLINE MERCHANTS GUILD'S MOTION FOR PRELIMINARY INJUNCTION

1

**CERTIFICATE OF SERVICE**

2

I certify that I served the foregoing via the Court's CM/ECF system.

3

4
s/ Aaron K. Block
Aaron K. Block