Aaron K. Block (*pro hac vice*)
THE BLOCK FIRM LLC
4200 Northside Parkway NW
Building 1, Suite 200
Atlanta, Georgia 30327
404-997-8419
aaron@blockfirmllc.com

Paul S. Rafelson (*pro hac vice*)
RAFELSON SCHICK, PLLC
2255 Glades Road, Suite 319
Boca Raton, Florida 33431
833-326-6529
paul@frsattorneys.com

Counsel for Plaintiff the Online Merchants Guild

Candice Fields (SBN 172174)
CANDICE FIELDS LAW
520 Capitol Mall, Suite 750
Sacramento, California 95814
916-414-8050
cfields@candicefieldslaw.com

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| **ONLINE MERCHANTS GUILD,** | **Case No. 2:20-cv-01952-MCE-DB** |
| **Plaintiff,** | |
| **vs.** | |
| **NICOLAS MADUROS, DIRECTOR,** | **THE ONLINE MERCHANTS GUILD'S** |
| **CALIFORNIA DEPARTMENT OF TAX &** | **OPPOSITION TO DEFENDANT'S** |
| **FEE ADMINISTRATION,** | **MOTION TO DISMISS** |
| **Defendant.** | |

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………i

TABLE OF AUTHORITIES………………………………………………………ii

MEMORANDUM OF POINTS AND AUTHORITIES……………………………...1

    I.    INTRODUCTORY STATEMENT………………………………….......1

    II.    STANDARD FOR CDTFA'S MOTION TO DISMISS…………………….1

    III.    ALLEGATIONS……………………………………………………….1

    IV.    ARGUMENT………………………………………………………...3

        a.  The TIA does not even arguably apply to most of the Guild's claims…3

        b.  The TIA does not bar the Guild's challenge to CDTFA's use tax demands since California's remedies are inadequate as to that claim..5

        c.  The Court has jurisdiction over the Guild's ITFA claim…………………9

        d.  The Court should not abstain…………………………………………14

            1.  Comity abstention is inapt………………………………………15

            2.  *Burford* abstention is unavailable……………………………16

            3.  *Pullman* is inapplicable………………………………………19

    V.    CONCLUSION………………………………………………………20

**Cases**

*A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889 (7th Cir. 2020) ....................................5

*Adkins v. VIM Recycling*, 644 F.3d 483 (7th Cir. 2011)...................................19

*Andal v. City of Stockton*, 137 Cal. App. 4th 86 (2006) ...................................14

*Bank of America v. State BOE*, 209 Cal. App. 2d 799 (1962) ........................................8

*Canton v. Spokane Sch. Dist.*, 498 F.2d 840 (9th Cir. 1974) ...................................17, 22

*Cartwright v. Univ. of Cal.*, 2006 U.S. Dist. LEXIS 16389 (E.D. Cal. 2006) ...................17

*Chemehuevi Indian Tribe v. Cal. BOE.*, 757 F.2d 1047 (9th Cir. 1985) ........................20

*Cingular Wireless, LLC v. Thurston Cty.*, 150 F. App'x 633 (9th Cir. 2005) ...................19

*City of Tucson v. U.S. West Comms.*, 284 F.3d 1128 (9th Cir. 2002)...........................19

*Direct Marketing Association v. Brohl*, 575 U.S. 1 (2015) ............................................3, 4

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018) ............................................16

*Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331 (1990) ........................................6

*Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984)...........................................17

*IBM Personal Pension Plan v. San Francisco*, 131 Cal. App. 4th 1291 (2005)...............5

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) .13

*Jerron West, Inc. v. Cal. BOE*, 129 F.3d 1334 (9th Cir. 1997) ........................................15

*Ladd v. BOE*, 31 Cal. App. 3d 35 (1973).......................................................10

*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) ............................................1

*Levin v. Commerce, Energy, Inc.*, 560 U.S. 413 (2010) .................................................18

*Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118 (2014) ........................17

*Loeffler v. Target Corp.*, 58 Cal. 4th 1081 (2014)............................................................9

*Midkiff v. Tom*, 702 F.2d 788 (9th Cir. 1983) .................................................................16

*Miller Bros. Co. v. Maryland*, 347 U.S. 340 (1954) ........................................................17

*Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54 (Ill. 2013) ......................................12

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) .................................................18

*Retirement Fund Trust v. FTB*, 909 F.2d 1266 (9th Cir. 1990) ....................................6, 7

RTC § 6937 .........................................................................................................................5

*S. Cal. Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002) ............................................19

*See RTC Commer. Assets Trust v. Phoenix Bond & Indem. Co.*, 169 F.3d 448 (7th Cir.

   1999) ...........................................................................................................................10

*Sipple v. City of Hayward*, 225 Cal. App. 4th 349 (2014) ................................................8

*TracFone Wireless, Inc. v. County of L.A.*, 163 Cal. App. 4th 1359 (2008) .....................9

*West Lynn Creamery v. Healy*, 512 U.S. 186 (1994) ......................................................11

*Wyeth v. Levine*, 555 U.S. 555 (2009) ............................................................................20

*Yamaha Corp. of Am. v. BOE*, 19 Cal. 4th 1 (1998) ...................................................9, 21

## Constitutional Provisions, Statutes, and Regulations

28 U.S.C. § 1341 .................................................................................................................5

Cal. Const. Art. XIII Sec. 32 .............................................................................................14

ITFA § 1101 ...........................................................................................................11, 12, 13

ITFA § 1105 .......................................................................................................................11

Pub. L. 114-215 Sec. 922 ..................................................................................................11

Reg. 1569 ..............................................................................................................12, 20, 21

RTC § 6005 ..................................................................................................................20, 21

RTC § 6204 .......................................................................................................................10

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

RTC § 6397 ................................................................................................5

RTC § 6902 ................................................................................................8

RTC § 6931 ..............................................................................................14

RTC § 6933 ..............................................................................................19

**Legislative Materials**

H.R. Rep. 105-808 ....................................................................................11

H.R. Rep. 107-240 ....................................................................................14

H.R. Rep. 113-510 ....................................................................................11

S. Rep. 105-184 ........................................................................................11

S. Rep. 105-185 ........................................................................................14

**Websites**

Ariz. Dep't of Rev., "FAQ—Remote Sellers and Marketplace Facilitators,"

https://azdor.gov/transaction-privilege-tax/retail-sales-subject-tpt/out-state-

sellers/frequently-asked-questions ...........................................................21

CDTFA, "Publication 114, Consignment Sales,"

https://www.cdtfa.ca.gov/formspubs/pub114/#Sales...................................12

U.S. House of Representatives, Office of the Law Revision Counsel, "About

Classification of Laws to the United States Code,"

https://uscode.house.gov/about_classification.xhtml;jsessionid=B2CD6E73EE27898A

8F3C8140C45A1E16 ...............................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTORY STATEMENT

The Court should deny CDTFA's motion to dismiss because in large measure CDTFA invokes the wrong legal standards or avoids dealing with the controlling Supreme Court and Ninth Circuit precedents, which establish that the Court has jurisdiction to hear the specific claims at issue here. For similar reasons, the Court should maintain its virtually unflagging obligation to hear a case alleging—in considerable detail—an ongoing civil rights violation affecting thousands of small business owners who are at risk of business destruction if not bankruptcy.

### II.    STANDARD FOR CDTFA'S MOTION TO DISMISS

Since CDTFA's "challenge to subject matter jurisdiction is 'facial,'"[1] the Court must accept the Guild's "allegations as true and draw[] all reasonable inferences in [the Guild's] favor" to "determine[] whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### III.    ALLEGATIONS

A brief summary of the allegations, viewed in the light most favorable to the Online Merchants Guild, is as follows. Amazon operates the country's largest and most important e-commerce store, the principal component of which is Amazon's Fulfilled by Amazon (FBA) program.[2] To implement FBA, Amazon uses hundreds of thousands of small online merchants (like the Guild's members), who source and supply goods for Amazon to sell in its store.[3] Those merchants give Amazon custody of the goods, which Amazon stores in a network of nearly 200 warehouses in North America.[4] When

---

[1] ECF No. 23 at 12. Pin-cites to filings are keyed to the CM/ECF pagination.
[2] ECF No. 1 ¶ 15.
[3] *Id.* ¶¶ 16–17.
[4] *Id.* ¶¶ 18–24.

consumers order goods from Amazon—in an online store over which Amazon maintains total control—Amazon will fulfill those orders from its warehouses.[5]

In the early 2010s, as Amazon was building out FBA, Amazon did not want to collect sales taxes; the lower prices would give the company an automatic advantage over retailers who did collect taxes.[6] For political reasons, CDTFA gave Amazon a pass.[7] The result, according to California's Treasurer, was billions in foregone revenue.[8]

Despite blessing a tax-free regime on Amazon.com for nearly a decade, the Department recently decided to change course and hold someone liable for those uncollected taxes.[9] Not Amazon, since the company is extraordinarily powerful, but Amazon's suppliers, who are typically small, non-resident businesses who lack Amazon's political and economic heft.[10] CDTFA has demanded that hundreds of thousands of such merchants register with the Department—on pain of felony jail time— and pay untold taxes back to 2012.[11] Since Amazon did not collect those taxes from its customers years ago, the affected merchants will need to pay the sums from their pockets, which will seriously damage if not bankrupt their small businesses.[12]

According to CDTFA, those merchants came within the Department's taxing authority when Amazon unilaterally decided to store FBA goods in Amazon's California warehouses.[13] Relatedly, CDTFA takes the position that the Supreme Court's "*Wayfair* threshold*" doctrine—which prevents states from imposing tax obligations on small non-

---

[5] *Id.*
[6] *Id.* ¶¶ 27–33.
[7] *Id.* ¶ 34. References to CDTFA include its predecessor agency, the Board of Equalization (BOE).
[8] ECF No. 1-19 at 2 (describing losses of $431 for one year alone).
[9] ECF No. 1 ¶ 3.
[10] *Id.*
[11] *Id.* ¶¶ 44–56.
[12] Id. ¶¶ 4; 56–57
[13] *Id.* ¶¶ 5; 39–43.

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

resident merchants—does not apply to non-residents when Amazon decides to store in California goods those merchants previously supplied to Amazon.[14]

On behalf of its members, who have been or fear being the target of CDTFA's efforts, the Online Merchants Guild has challenged four discrete aspects of CDTFA's actions on federal constitutional and statutory grounds: (1) CDTFA's registration demands; (2) CDTFA's penalty threats to those who do not register; (3) CDTFA's "*Wayfair*-override" policy; and (4) CDTFA's retroactive tax demands.[15] The Guild principally seeks declaratory and injunctive relief that those policies are unlawful.[16]

## IV.    ARGUMENT

The Court should deny CDTFA's motion because the Court has—and should retain—jurisdiction over the Guild's claims.

### a.  The TIA does not even arguably apply to most of the Guild's claims.

CDTFA's lead argument goes off track on the law. The Tax Injunction Act does not "divest[] the district courts of jurisdiction over any action that threatens to interfere with the assessment of collection of state taxes."[17] The Supreme Court held just the opposite in *Direct Marketing Association v. Brohl*, 575 U.S. 1 (2015):

- "[T]he TIA is not keyed to all activities that may improve a State's ability to assess and collect taxes. Such a rule would be inconsistent not only with the text of the statute, but also with our rule favoring clear boundaries in the interpretation of jurisdictional statutes." *Id*. at 11–12.

- "Applying the correct definition [of "restrain" in the TIA], a suit cannot be understood to 'restrain' the 'assessment, levy or collection' of a state tax if it merely inhibits those activities." *Id*. at 14.

_____

[14] *Id*. ¶ 87.
[15] *See* ECF No. 22 at 13–14 (distilling CDTFA's conduct into four challenged policies).
[16] Although the core of this case is equitable, the Guild—like most litigants at the outset of a case—has pleaded and preserved the right to seek other relief that may be available depending on how discovery develops.
[17] ECF No. 23 at 8 & 12.

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

For those reasons, the Supreme Court rejected the vague "interference" test CDTFA now asks the Court to employ. *See id.* at 12 (reversing, because it "was error," the Tenth Circuit's holding that "the TIA bars any suit that would 'limit, restrict, or hold back' the assessment, levy, or collection of state taxes").

Instead, the Supreme Court held that courts must conduct a claim-specific analysis and *do* have jurisdiction over tax-related claims that challenge "information gathering" measures like "enforcement of [] notice and reporting requirements." *Id.* at 8; 11. Even if those claims "inhibit[]" state tax collection. *Id.* at 14. At least three of the Guild's four claims are therefore simply outside the scope of the TIA. As the Guild explained in its motion for a preliminary injunction, CDTFA's registration demands, penalty threats, and *Wayfair*-override policy are not acts of assessment, levy, or collection, and *Direct Marketing Association* allows those claims to proceed.[18]

CDTFA fails to engage with the controlling Supreme Court decision. The Department's original motion to dismiss did not even cite the case.[19] In its renewed motion, the Department simply tacked a citation onto pre-existing text—where the citation does not fit, because *Direct Marketing Association* rejected the amorphous application of the TIA the Department urges.[20] To hear the Department tell it, the TIA is a bar because the Guild's claims might lead to "intrusions into state sales and use tax collection."[21] But as the Supreme Court explained, that is not how the TIA works. The statutory text alone controls; claims that are outside the text are cognizable in federal court even if they have secondary "inhibit[ory]" effects on taxes. 575 U.S. at 14. Thus, the TIA does not bar the Guild's challenges to CDTFA's registration demands, penalty threats, and *Wayfair*-override policy.

_____

[18] *See* ECF No. 22 at 15–16.
[19] ECF No. 16 at ii–iii (Table of Authorities).
[20] *Compare* ECF No. 15 at 12, *with* ECF No. 23 at 13.
[21] ECF No. 23 at 13 (citing *Direct Mktg. Ass'n*).

**b. The TIA does not bar the Guild's challenge to CDTFA's use tax demands since California's remedies are inadequate as to that claim.**

The Guild acknowledges that its challenge to California's use tax demands might arguably implicate the first part of the TIA, but the Court has jurisdiction because that claim does not satisfy the second part of the TIA—the adequate-remedy requirement.

Just because a claim challenges an act of assessment, levy, or collection does not necessarily mean the claim is subject to the TIA. To avoid federal jurisdiction, the state must *also* offer litigants a "plain, speedy and efficient" remedy to challenge the state law in question. 28 U.S.C. § 1341. The existence of state-court standing is a critical issue in the remedy analysis. When litigants "cannot make their [constitutional] case in state court, [they] have no 'remedy' at all for their claims—never mind a 'plain, speedy and efficient' one—and the [TIA] does not bar their federal suit." *A.F. Moore & Assocs. v. Pappas*, 948 F.3d 889, 896 (7th Cir. 2020).

California's taxpayer standing rules deprive the Guild of an adequate remedy for its challenge to CDTFA's use tax demands. California limits standing to the party considered the "taxpayer," who may only pursue a refund. Cal. RTC § 6937; *IBM Personal Pension Plan v. San Francisco*, 131 Cal. App. 4th 1291 (2005) (same).

Because of those rules, Ninth Circuit precedent squarely allows at least two aspects of the Guild's challenge to CDTFA's use tax demands. In *Direct Marketing Association v. Bennett*, 916 F.2d 1451, 1455 (9th Cir. 1990), the court held that a trade association for non-resident merchants—just like the Guild—could bring claims (1) on its own behalf, (2) on behalf of association members who had not yet received assessments, and (3) on behalf of members who had received assessments but whose taxpayer standing was doubtful. The Guild brings three similar challenges.

*First*, because the Guild is not the taxpayer, the Guild would lack standing in a refund action. For that reason, *Bennett* allowed a trade association's claims to proceed. 916 F.2d at 1455. Similarly, the court held that retirement trusts could proceed in federal

court because "California law denies the trusts a judicial forum to challenge actions of the [Department]." *Retirement Fund Trust v. FTB*, 909 F.2d 1266, 1272 (9th Cir. 1990). Under controlling precedent, the Guild's lack of standing in state court means the TIA is no bar in this Court.

Instead of engaging with the controlling cases, CDTFA stretches an inapposite one. According to CDTFA, "[it] is of no import that plaintiff Online Merchants Guild does not owe the tax and therefore cannot avail itself of California's taxpayer refund remedy" because the "Tax Injunction Act applies whenever a state tax *claim* has a plain, speedy, and efficient remedy in state court . . . ." ECF No. 23 at 16 (citing *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 338–39 (1990)). According to CDTFA, because some members might be able to bring refund claims, the Guild's own lack of taxpayer standing is irrelevant under *Alcan Aluminum*. *Id*. But *Alcan Aluminum* held no such thing. There, the Court found a remedy adequate because the corporate plaintiffs, "[a]s sole shareholders, [] have total control over [the taxpayers]. They can direct in all respects their subsidiaries pursuit of state-court relief . . . . [The plaintiffs'] inability to bring state-court challenges in their own names is not determinative where, as here, they control entities that can bring such challenges." *Id*. at 339. That is not this case— the Guild is not a parent corporation, and its members are not corporate subsidiaries over whom the Guild has "total control." *Alcan Aluminum* does not bar the Guild's challenge to CDTFA's use tax demands in its capacity as a trade association, and *Bennett* specifically allows that claim to proceed in this Court.

*Second*, *Bennett* allows the Guild's challenge to CDTFA's use tax demands on behalf of members who have not yet received—but fear—use tax assessments.[22] Those members cannot seek preemptive relief in California's courts. Under the same

---

[22] *See* ECF No. 1 at ¶ 65; ECF No. 1-2 at ¶¶ 22–25 (describing fears among merchants who anticipate receiving tax demands from CDTFA).

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

circumstances, the Ninth Circuit held the TIA inapplicable because "whether or not the state will issue a determination is a matter of speculation." *Bennett*, 916 F.2d at 1457. "[T]he mere possibility" of a determination "does not render *certain* the availability of a remedy," which "is an important factor in establishing that a state court remedy is 'plain'" *Id*. Similarly, the *Retirement Fund Trust* court held remedies inadequate when a party would have to await future action by the state. 909 F.2d at 1273 (rejecting application of TIA because it was "a matter of speculation" whether and when the state would undertake collection action that might eventually allow review in state court). CDTFA offers no argument for disregarding those holdings, which allow the Guild to proceed.

*Third*, the one place where *Bennett* is contestable is with respect to claims on behalf of members who *have* received use tax demands. In fairness, they *should* be able to pursue refund actions in court (and some have in the administrative system). But whether those members can actually pursue refunds in court remains muddled. The "certain" availability of a remedy "is an important factor in establishing that a state court remedy is 'plain.'" *Bennett*, 916 F.2d at 1457; *accord, e.g.*, *Retirement Fund Trust*, 909 F.2d at 1274. But California taxpayer standing law suffers from significant uncertainty because of a longstanding distinction between sales taxes and use taxes for standing purposes. In-state merchants collect sales tax and are considered the "taxpayer" with standing. *Bennett*, 916 F.2d at 1456. Out-of-state merchants like the Guild's members, on the other hand, are considered "mere collector[s]" of use taxes; *consumers* are the primary—and perhaps exclusive—"taxpayers" with refund standing. *See id.* at 1455 (citing *Bank of America v. BOE*, 209 Cal. App. 2d 780, 799 (1962)).

As of 1990, *Bennett* concluded that California law likely deprived out-of-state merchants of taxpayer standing, meaning that the TIA would not apply. The court's reasoning, over three pages, rested on both case law and statutory grounds, including Revenue & Taxation Code § 6902, which expressly limited refund actions to "taxpayers." *Id*. at 1454–1457. As both sides here acknowledge, the Legislature

amended § 6902 effective 1992, removing the reference to "taxpayers"; one could now read the statute to allow refund claims by those who remit taxes, even though they are still not considered "taxpayers."[23] It is also true that intermediate appellate courts have taken some steps to expand common law standing, concluding that it would be unjust for the state to demand payments and then refuse a refund. But those exceptions, which are litigated on a case-by-case basis, are available only in "limited" and "unusual circumstances." *Sipple v. City of Hayward*, 225 Cal. App. 4th 349, 359 (2014). And it apparently remains California law that merchants who make "voluntary" tax payments might still lose the right to a refund under the voluntary payment doctrine. *See TracFone Wireless, Inc. v. County of L.A.*, 163 Cal. App. 4th 1359 (2008). Meanwhile, California's Supreme Court has continued to emphasize that only the "*taxpayer* [i]s the party with [refund] standing." *Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1128 (2014).

In short, the law is a muddle. At a minimum, non-resident merchants have serious exposure to standing risk; their entire case could be thrown out of court after paying the price of entry. CDTFA's citation to a single administrative matter in which a merchant pursued an administrative appeal, which is not binding on the courts and does not appear to have grappled with the standing issue in court, does not begin to eliminate that risk.[24] S*ee Yamaha Corp. of Am. v. BOE*, 19 Cal. 4th 1, 25 (1998) (agency views are not binding on the courts, and the deference due them depends on the strength of their persuasive consideration of the issue, among other factors). So, despite some

---

[23] CDTFA broadly casts *Bennett* as "no longer good law," ECF No. 23 at 15, but that is at best an overstatement. There were three salient TIA holdings in *Bennett*—as to the association itself (which was not a taxpayer), as to association members who had not yet received assessments (and who could therefore not yet seek refunds), and as to members who had received assessments (and whom the court found lacked taxpayer standing). *See* 916 F.2d at 1453–58. The subsequent amendment to RTC § 6902 at most affected the third category, by perhaps permitting merchants who had received assessments to initiate refund actions, contrary to *Bennett*'s interpretation of the law prior to the amendment. But that does not affect *Bennett*'s first and second holdings, which remain binding but which CDTFA ignores.
[24] ECF No. 23 at 15.

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

evolution in the doctrine, state law still does not "unequivocally show[] that a non-taxpayer retailer who voluntarily remits use taxes to [CDTFA] can sue for a refund." *Bennett*, 916 F.2d at 1456. Given that uncertainty, *Bennett* continues to allow a challenge to use tax demands on behalf of members who have received assessments.

Lastly, it is debatable whether CDTFA's demands are even for taxes at all. California's courts have long construed the use tax obligation as to non-resident merchants to be a "debt rather than [a] tax[]." *Bank of America*, 209 Cal. App. 2d at 800 (accepting CDTFA's argument that the use tax liability was a debt rather than a tax to save the measure from possible constitutional issues); *accord* Cal. RTC § 6204 (explaining that sums "required to be collected by the retailer . . . constitute[] debts owed by the retailer to this state").The law makes the merchant "merely an agent through which [use tax] collection is made." 209 Cal. App. 2d at 799. Merchants who do not collect those amounts are not taxed, but rather made to pay a penalty in the "amount in lieu of what should have been collected if the retailer fails in his statutory duty." *Ladd v. BOE*, 31 Cal. App. 3d 35, 39 (1973). Insofar as the use tax demands are not really taxes—which is an issue of federal law, informed by state law—the TIA would not apply. *See RTC Commer. Assets Trust v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 457–58 (7th Cir. 1999) (holding that penalty was not a tax). CDTFA failed to grapple with that threshold issue, which would keep this claim outside the TIA.

For all of those reasons, the Guild's claims challenging CDTFA's use tax demands may proceed.

### c. The Court has jurisdiction over the Guild's ITFA claim.

The Guild's claim under the Internet Tax Freedom Act is outside the TIA for an additional reason specific to that claim: California refuses to provide an adequate ITFA remedy by categorically denying injunctive relief in tax cases.

Since the 1990s Congress has been concerned with the problem of state taxation of e-commerce, given the Nation's "30,000 taxing jurisdictions" and the risk that

interstate commerce "could be stifled . . . by the haphazard imposition of multiple and confusing State and local taxes." S. Rep. 105-184 at 3. So Congress adopted a "national policy against State and local interference with interstate commerce on the Internet" via a ban "on the imposition of exactions that would interfere with the free flow of commerce via the Internet." H.R. Rep. 105-808 at 1.[25] Congress knew it was disrupting state taxation—that was the point. *See* ITFA § 1101(b) (recognizing that the ITFA would "modify, impair, or supersede" state tax collection in covered areas).

The ITFA expressly preempts state laws that "impose . . . discriminatory taxes on electronic commerce." ITFA § 1101(a), codified at 47 U.S.C. § 151, Note.[26] Congress specifically outlawed state rules that "impose[] an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property . . . accomplished through other means." ITFA § 1105(2)(A)(iii). States must impose the same tax obligations on (typically resident) brick-and-mortar and (typically non-resident) e-commerce businesses, which among other things mitigates local economic favoritism. *Cf*. *West Lynn Creamery v. Healy*, 512 U.S. 186, 200 (1994) (explaining that when tax burdens fall equally on resident and non-resident businesses, "a State's own political processes will serve as a check against unduly burdensome regulations").

CDTFA did not challenge the plausibility of the Guild's claim that the Department is violating the ITFA by imposing a discriminatory tax. The gist of that claim is as follows.[27] In the brick-and-mortar consignment context, CDTFA requires the

---

[25] Congress repeatedly reauthorized the ITFA with "enormous bipartisan support," H.R. Rep. 113-510 at 2, before making the law permanent in 2016, Pub. L. 114-215 Sec. 922.

[26] The ITFA is codified as a "statutory note," due to the "editorial judgment" of the Law Revision Counsel, but that "does not in any way affect the provision's meaning or validity." U.S. House of Representatives, Office of the Law Revision Counsel, "About Classification of Laws to the United States Code," https://uscode.house.gov/about_classification.xhtml;jsessionid=B2CD6E73EE27898A8F3C8140C45A1E16.

[27] *See* ECF No. 1 at ¶¶ 16–25 (describing how Amazon operates FBA like a consignment operation); ECF No. 1-2 at ¶¶ 4–20 (same); ECF No. 1 at ¶¶ 105–111 (explaining how CDTFA's discriminatory application of California's tax obligation rules in the consignment setting violates the ITFA).

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

consignment shop—*i.e.*, the point of sale—to collect taxes from the consumer and remit those taxes to the state.[28] Amazon FBA uses a consignment model, with Amazon taking custody of goods, controlling consumer transactions, and delivering the goods to customers. If CDTFA treated Amazon like a brick-and-mortar store, the Department would have required Amazon—not its suppliers—to collect and remit taxes. But the Department is now trying to enforce a special practice—taking the obligation from Amazon and retroactively putting it on Amazon's suppliers. CDTFA lacks the authority to "impose" that discriminatory obligation on the Guild's members. ITFA § 1101(a). Thus, the Department's use tax demands are "void and unenforceable." *Performance Mktg. Ass'n v. Hamer*, 998 N.E.2d 54, 59–60 (Ill. 2013) (striking down state tax obligation place on e-commerce merchants but not similar brick-and-mortar merchants).

Turning to the TIA, the only effective remedy for an ITFA violation is a prompt injunction to stop the unlawful collection and remittance obligation. Absent injunctive relief, states will be able to "impose" the very obligations that Congress outlawed. ITFA § 1101(a). Refunds are inadequate; practically speaking, consumer transactions would be irreparably tainted by unlawful taxes because it will be difficult if not impossible to unwind the consequences after the fact. Beyond compliance costs and standing issues, it is unrealistic to assume that merchants would litigate refund remedies for small-dollar taxes they collected from consumers; it would cost the merchants money to effectuate those refunds, which they would then need to turn back over to consumers to avoid claims of unjust enrichment.[29] In the Amazon FBA context in particular, it would be impractical if not impossible to make those refunds because Amazon generally prohibits merchants from contacting consumers and limits access to contact information for

---

[28] 18 CCR 1569; CDTFA, "Publication 114, Consignment Sales," https://www.cdtfa.ca.gov/formspubs/pub114/#Sales.
[29] *See, e.g.*, ECF No. 1 at ¶¶ 52–54 (alleging, with citation to underlying affidavits, the real-world impediments to pursuing refund actions in court, which require the pre-payment of taxes allegedly owed).

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

"Amazon's customers."[30] Moreover, merchants who collect an arguably unlawful tax from consumers face tort exposure. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330 (N.D. Ill. 2010) (certifying settlement class; companies who collected arguably ITFA-barred tax required to seek refunds and reimburse consumers).

For merchants who themselves pay the tax (because Amazon did not collect it initially), there are still practical hurdles to relief in state court beyond just the standing issues described above. As the Guild alleged, and as the Court must take as true as against CDTFA's facial challenge, those refund claims are classic negative-value claims—it typically makes no economic sense to pay the amount due and then litigate for a refund, which will likely be less than the attorney's fees required.[31]

Absent an injunction, unlawful state taxes will continue in operation and create the "multiplicity of discriminatory and potentially fatal State and local taxes" Congress was concerned about. H.R. Rep. 107-240 at 10; *see also* S. Rep. 105-185 at 5 (ITFA hearing featuring the story of a small business owner, whom a state retroactively decided "should have been collecting sales tax" years earlier; the "decision caused [his] business to fail, and [he] ultimately was forced to file for bankruptcy protection").

In short, only prompt injunctive relief will vindicate the ITFA. Yet California categorically denies that remedy in tax-related cases. Cal. Const. Art. XIII Sec. 32; Cal. RTC § 6931. California only makes refunds available at the conclusion of an administrative process and "pay up or shut up" litigation in California state court, *Andal v. City of Stockton*, 137 Cal. App. 4th 86, 90 (2006), which will plausibly take "years" of litigation and "thousands in legal fees."[32] The upshot is that California's remedial system

---

[30] ECF No. 1 at 20.
[31] *See* ECF No. 1 at ¶¶ 52–54.
[32] ECF No. 1 at ¶ 63.

allows the ongoing and long-term imposition of burdens that Congress expressly preempted. Absent federal jurisdiction, the ITFA will be inoperative in California.

CDTFA has provided the Court no authority to justify that radical outcome. The Department invokes some decisions that found California's remedies adequate as to *other* claims, but those cases did not address the ITFA and do not support the theory that California can nullify that federal law. CDTFA seems to think of *California v. Grace Brethren Church*, 457 U.S. 393 (1982), as the Department's best authority, but that case cuts in the Guild's favor. There, the Court considered whether the lack of injunctive relief in California's system compromised First Amendment interests in avoiding "certain recordkeeping, registration, and reporting requirements" and employee benefit eligibility hearings. *Id*. at 415. *Grace Brethren* grappled with and rejected the necessity of injunctive relief in the specific setting of that dispute for three specific reasons. *First*, the plaintiffs could "challenge the constitutionality" of the taxes at issue "*before* any entanglement from the benefit eligibility hearings." *Id*. at 415–16 (emphasis added). The plaintiffs might have to pay a portion of the taxes, but would not suffer the principal free exercise injury of entanglement. Here the opposite is true: the ITFA injury will already occur—and be effectively irreparable—long before the conclusion of any state process.

*Second*, the Court concluded that the "same burdens" might equally befall the plaintiffs in federal court, since "it took the appellees in these cases over two years to obtain injunctive relief in federal court." *Id*. at 416 & n. 34. That is unlikely here, and an injunction would forestall further ITFA injury. *Third*, the Court focused on Congress's intent to avoid disruption of state tax collection. *Id*. at 416. But that is not enough to make every state system adequate under the TIA, or else *Grace Brethren* would be a one-line decision. Moreover, Congressional intent cuts the opposite way in the ITFA context—Congress expressly intended to disrupt state taxation. All said, *Grace Brethren* demonstrates that the courts must consider whether injunctive relief is necessary as to the claim at issue, and the Court's reasoning illustrates why it is necessary here.

The CDTFA's other major case is *Jerron West, Inc. v. California State Board of Equalization*, 129 F.3d 1334 (9th Cir. 1997), which likewise does not permit ITFA-nullification. There again the court examined whether available state remedies would allow vindication of the specific constitutional right at issue. The *Jerron West* plaintiffs wanted to enjoin a state tax proceeding during a parallel criminal prosecution; absent such an injunction, they claimed they were limited in the evidence they could put on to challenge the taxes without incriminating themselves. *Id.* at 1338–39. The Ninth Circuit examined the operative state procedural and evidentiary rules and concluded that the plaintiffs were simply wrong about how the tax and criminal processes interacted. *Id.* at 1339–40. In other words, the supposed injury did not exist; the availability or not of injunctive relief was immaterial. Here, by contrast, the Guild's members have experienced and will continue to experience ITFA injury absent an injunction.

CDTFA's other argument—that the ITFA is not an "exception" to the TIA—misses the point. The Guild is not arguing for an express exception, which does not exist, but that does not end the analysis. Rather, the Court must engage in the typical judicial task of "harmonizing" Congressional enactments that bear on related subjects so as to "give effect to both." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1617 (2018) (cleaned up). The only way to give effect to both statutes—to respect state taxation when states provide adequate remedies, while enforcing Congress's ban on discriminatory state taxation—is to hear the ITFA claim in this Court, where injunctive relief is available to effectuate that statute. CDTFA has offered no roadmap to otherwise save the ITFA.

Accordingly, because California's refund-only system is inadequate with respect to the ITFA, the Court has jurisdiction to hear the Guild's ITFA claim.

### d. The Court should not abstain.

The Court should not abstain and allow federal rights to wither in CDTFA's own system. Parties seeking abstention have always borne a "heavy burden necessary to justify" the discretionary abandonment of jurisdiction. *Midkiff v. Tom*, 702 F.2d 788, 801

(9th Cir. 1983), *aff'd in relevant part sub nom. Hawaiian Hous. Auth. v. Midkiff*, 467 U.S. 229, 236–37 (1984). The Ninth Circuit long ago held that "cases involving vital questions of civil rights are the least likely candidates for abstention." *Canton v. Spokane Sch. Dist.*, 498 F.2d 840, 856–46 (9th Cir. 1974) (cleaned up). As this Court has likewise recognized, the "circumstances under which abstention is appropriate are even more limited when claims are brought under 42 U.S.C. § 1983." *Cartwright v. Univ. of Cal.*, 2006 U.S. Dist. LEXIS 16389, *27 (E.D. Cal. 2006).

CDTFA has not met its heavy burden. The upshot of abstention would be that a massive financial injury to thousands of politically weak outsiders would plausibly go unremedied. No financial institution or consumer product company could get away with that. Yes, state taxes raise some additional considerations, but taxation is not a lawless environment: "the seizure of property by the state when there is no jurisdiction or power to tax is simple confiscation and a denial of due process of law." *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 344–45 (1954)). Abstention would allow that lawlessness to fester, which is contrary to the entire thrust of § 1983 and this Court's "virtually unflagging" "obligation" to exercise its jurisdiction. *Lexmark Int'l, Inc. v. Static Control Components*, 572 U.S. 118, 126 (2014). Further, there are legal defects with all of CDTFA's abstention theories, all of which the Court should reject.

### 1. Comity abstention is inapt.

As the Guild explained in its motion for a preliminary injunction, the Court should not abstain under the comity doctrine for two principal reasons.[33] *First*, the same lack of adequate remedies that precludes application of the TIA precludes application of the comity doctrine. *See Levin v. Commerce, Energy, Inc.*, 560 U.S. 413, 421–22 (2010). *Second*, the considerations that the Supreme Court identified for application of the

---

[33] ECF No. 22 at 21–23.

comity doctrine cut against abstention here. *See id.* at 431–32. If there were ever a case to decline comity abstention, it is this one. CDTFA cannot trample on the federal rights of thousands of non-residents and their home sovereigns, as well as federal interests in the interstate economy, and then invoke comity—a principle of mutual respect—as a shield. The Court should decline to abstain on comity grounds.

### 2. *Burford* abstention is unavailable.

The Court should likewise decline to abstain under *Burford*, which is "an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (cleaned up). *Burford* balances the "strong federal interest" in enforcement of federal rights against legitimate state interests in resolving certain technocratic policy choices in specialized state tribunals, but the "balance only rarely favors abstention." *Id*.

*Burford* abstention is categorically unavailable here. Tax refund suits are litigated in California courts of general jurisdiction. *See* ECF No. 23 at 14; Cal. RTC § 6933. But it is a necessary prerequisite to *Burford* abstention that the state has "concentrate[d] review in a particular or specialized court." *Cingular Wireless, LLC v. Thurston Cty.*, 150 F. App'x 633, 635 (9th Cir. 2005) (citing *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 806 (9th Cir. 2002); *City of Tucson v. U.S. West Comms.*, 284 F.3d 1128, 1133 (9th Cir. 2002)); *Adkins v. VIM Recycling*, 644 F.3d 483, 504 (7th Cir. 2011) ("judicial review by state courts with *specialized expertise* is a prerequisite to *Burford* abstention").

CDTFA failed to even address that threshold requirement, which is reason enough to reject the Department's *Burford* request. Another dispositive reason is that *Burford* abstention requires "timely and adequate state court review" to be "available." S. *Cal. Edison Co.*, 307 F.3d at 806. As explained above, it is not here.

Moreover, even if *Burford* abstention were theoretically available, this would be poor fit for abstention. The federal issues in this case are "easily separable from *complicated* state law issues with which the state courts may have special

competence," *id.* (emphasis added), because the state law issues are few and uncomplicated. The gravamen of this case is federal law. Most of the Guild's claims (*e.g.*, the personal jurisdiction and retroactivity claims) require little to no deep analysis of state law. Those claims are driven by federal restraints on CDTFA's theory of personal jurisdiction or the power to retroactively change tax rules.

The Guild's ITFA claim involves an analysis of the interaction between state law and federal law, but that is true of all preemption claims, which are heard every day in federal courts. The actual state law question—whether CDTFA is treating e-commerce consignment operations differently from brick-and-mortar consignment operations—is not hard. The operative text of California's consignment regulation is two sentences: "a person who has possession of property owned by another, and also the power to cause title to that property to be transferred to a [consumer] without any further action on the part of its owner, . . . is a retailer . . . . Tax applies to his gross receipts from such a sale." Cal. Regulation 1569 (emphasis added). In turn, a "person" can be more than a single individual or corporation; the definition "includes any individual, firm, partnership, joint venture, [or various corporate entities], or any other group or combination acting as a unit." Cal. RTC § 6005. Those are routine questions, which federal courts are equipped to analyze. *See, e.g.*, *Chemehuevi Indian Tribe v. Cal. BOE.*, 757 F.2d 1047, 1055 (9th Cir. 1985) (interpreting the substantively identical "person" language in California's tobacco tax statute), *rev'd on other grounds*, 474 U.S. 9 (1985). In the context of preemption litigation, this is on the simple end of the spectrum. *Cf.*, *e.g.*, *Wyeth v. Levine*, 555 U.S. 555 (2009) (examining both the contours of a jury verdict and the complex FDA statutory and regulatory enforcement regime).

CDTFA's claim that the Guild wants the Court to "second-guess the opinion of an expert state agency" is not quite right.[34] For one thing, most of the Guild's claims turn on federal law, not state law. For another, we are not dealing with the typical administrative case, where an agency adopted a formal position following a regular, public process. Rather—on review of a facial motion to dismiss—the Court must accept that CDTFA (1) adopted a political position to subsidize Amazon,[35] and (2) later decided to make Amazon's suppliers pay for that subsidy. The Department's 2012 non-public "opinion letter" only concerned the former decision, and is expressly non-binding.[36] The letter, in concluding that two Amazon subsidiaries were not individually consignment operators, because each one satisfied only half of the definition, skipped over the fact that California law requires CDTFA to treat related parties working together as one "person" who can collectively be a consignment operator and therefore be required to collect taxes.[37] In any event, the facts of what CDTFA actually decided and why are not for resolution against the Guild on a motion to dismiss.

All told, CDTFA has not shown that any specific state law is particularly complex, much less that specialized state courts have special competence in that area. Further, there are multi-state implications to this case because CDTFA's conduct is affecting

---

[34] ECF No. 23 at 13.

[35] *See, e.g.*, ECF No. 1 at ¶ 34 (California Treasurer Ma explaining to the media that the "number one" reason the state refused to make Amazon collect taxes was that "the governor's office has been trying to woo Amazon into putting a headquarters here. I've been pushing and they haven't wanted to do anything up front.").

[36] *See* ECF No. 1-4 at 11–12 ("If the actual facts differ from the facts [Amazon's consultant, Pricewaterhouse Coopers provided], the opinions expressed in this letter may not be reliable. . . . Finally, the ultimate determination of whether or how tax applies to these transactions will be based on the actual facts and circumstances, as verified by audit."); *see also Yamaha Corp.*, 19 Cal. 4th at 25 (agency views are not binding statements of the law).

[37] *Compare* ECF No. 1-4 (describing how Amazon operates FBA through wholly-owned subsidiaries), *with* Cal. RTC § 6005 (broadly defining "person" for tax collection purposes to include joint efforts by multiple entities), *and* Regulation 1569 (incorporating the "person" standard into the definition of a consignment operator who must collect taxes).

THE ONLINE MERCHANTS GUILD'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

citizens nationwide and other states are following suit on similar facts—meaning that recurring issues of federal law need resolution.[38] This is no case for *Burford* abstention.

### 3. *Pullman* is inapplicable.

In asking the Court to *dismiss* the case on the basis of *Pullman* abstention, the Department mistakes the available relief—a stay of particular issues while they are resolved in state court, not dismissal of an entire federal case. The Ninth Circuit has "generally considered dismissal inappropriate following *Pullman* abstention"; instead of outright dismissal, the district court "should stay the federal constitutional question until the matter has been sent to state court for a determination of the uncertain state law issue." *Courtney v. Goltz*, 736 F.3d 1152, 1164 (9th Cir. 2013) (citing multiple cases).

But the Department points to no state court cases the Court could stay particular issues in favor of. The Guild is unable to bring such a case in California court, and CDTFA identifies no pending state court case in which the single state law question of note—whether Amazon FBA meets the definition of a consignment arrangement—is even pending. Taking the Guild's allegations as true, the Court must assume that small business are unlikely to litigate that issue to resolution in state court because it would generally be economically irrational to do so.[39] And unlike in other jurisdictions, this Court cannot certify a question into the state system. Cal. R. Ct. 8.548.

CDTFA has failed to explain what a stay under *Pullman* would actually accomplish—other than to let these important issues die on the vine—which cannot

---

[38] *See* ECF No. 1 ¶¶ 58 (describing multi-jurisdictional nature of problem as states echo CDTFA's position that Amazon's inventory storage choices create authority over Amazon's suppliers); *but see* Ariz. Dep't of Rev., "FAQ—Remote Sellers and Marketplace Facilitators" (concluding that property stored in a "fulfillment center" does "[n]ot likely" give rise to physical nexus with the state), https://azdor.gov/transaction-privilege-tax/retail-sales-subject-tpt/out-state-sellers/frequently-asked-questions.

[39] ECF No. 1 ¶¶ 62–64. Just because some Guild members have filed administrative appeals does not mean they will later pursue state court cases to conclusion. The calculus is different because litigants do not have to pay the sum at issue to pursue administrative appeals, unlike proceeding in state court.

justify abstention. *See Canton*, 498 F.2d at 846 ("the objectives of the Civil Rights Act would be defeated if" abstention meant that "an alleged violation of the federal constitution would have to stagnate in the federal court until some nebulous or nonexistent remedy was pursued like a will-o'-the-wisp in the state court.").

CDTFA also cannot meet its burden to justify a stay because this case does not involve *Pullman* issues. The Supreme Court has "frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction." *Hawaiian Hous. Auth.*, 467 U.S. at 237. CDTFA does not seriously engage with that standard, which CDTFA cannot meet. As with *Burford*, for the most part the Guild's claims do not depend on the debatable construction of state statutes (as opposed to the fair application of state law to facts) in a way that would moot the constitutional problems. A *Pullman* stay does not fit any issue in this case.

## V. CONCLUSION

For the foregoing reasons, the Online Merchants Guild respectfully requests that the Court deny CDTFA's renewed motion to dismiss.

Respectfully submitted this 1st day of April, 2021.

s/ Aaron K. Block
Aaron K. Block (*pro hac vice*)
Paul S. Rafelson (*pro hac vice*)
Candice L. Fields (SBN 172174)

Counsel for Plaintiff
Online Merchants Guild

**CERTIFICATE OF SERVICE**

I certify that I served the foregoing via the Court's CM/ECF system.


s/ Aaron K. Block
Aaron K. Block