MATTHEW RODRIQUEZ, State Bar No. 95976
Acting Attorney General of California
MOLLY K. MOSLEY, State Bar No. 185483
Supervising Deputy Attorney General
MICHAEL SAPOZNIKOW, State Bar No. 242640
GINA TOMASELLI, State Bar No. 267090
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 210-7344
 Fax: (916) 323-7095
 E-mail: Michael.Sapoznikow@doj.ca.gov
*Attorneys for Defendant Nicolas Maduros,
Director, California Department of Tax & Fee
Administration*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ONLINE MERCHANTS GUILD,**<br><br>                                Plaintiff,<br><br>v.<br><br>**NICOLAS MADUROS, DIRECTOR, CALIFORNIA DEPARTMENT OF TAX & FEE ADMINISTRATION,**<br><br>                                Defendant. | 2:20-cv-01952-MCE-DB<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: April 22, 2021<br>Time:                2:00 p.m.<br>Courtroom:      7<br>Judge:              The Honorable Morrison C. England, Jr.<br>Trial Date:       Not Set<br>Action Filed:   September 29, 2020 |

# TABLE OF CONTENTS

**Page**

Introduction ...................................................................................................................1
Argument .......................................................................................................................1
    I.    The Complaint is Barred by the Tax Injunction Act......................................1
          A.    The Complaint Falls Within the Scope of the Tax Injunction Act ...................................................................................1
          B.    California's Tax Refund Remedy Is Plain, Speedy, Efficient, and Available to Any Retailer that Remits Sales and Use Tax.........5
          C.    Congress Did Not Create an Exception to the Tax Injunction Act for the Internet Tax Freedom Act..............................................9
    II.    The Complaint Is Barred by the Principle of Comity ...................................9
    III.    The Complaint Should Be Dismissed Without Leave to Amend ...............10
Conclusion ...................................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

Arkansas v. Farm Credit Servs. of Cent. Ark.
  520 U.S. 821 (1997) ................................................................................................4

Bank of America v. State Bd. of Equalization
  209 Cal. App. 2d 780, 799 (1962)..........................................................................8

California v. Grace Brethren Church
  457 U.S. 393 (1982) .......................................................................................4, 7, 9

Capitol Indus.-EMI, Inc. v. Bennett
  681 F.2d 1107 (9th Cir. 1982).................................................................................7

Chrysler Credit Corp. v. Ostly
  42 Cal. App. 3d 663 (1974)) ...................................................................................6

Decorative Carpets, Inc. v. State Bd. of Equalization
  58 Cal. 2d 252 (1962)..............................................................................................6

Dillon v. State of Mont.
  634 F.2d 463 (9th Cir. 1980) ..................................................................................4

Direct Marketing Association v. Bennett
  916 F.2d 1451 (9th Cir. 1990).........................................................................6, 7, 8

Direct Mktg. Ass'n v. Brohl
  575 U.S. 1 (2015) .......................................................................................2, 3, 4, 5

Fair Assessment in Real Est. Ass'n, Inc. v. McNary
  454 U.S. 100 (1981) ..............................................................................................10

Franchise Tax Bd. v. Alcan Aluminum
  493 U.S. 331 (1989) ............................................................................................7, 8

Fredrickson v. Starbucks Corp.
  840 F.3d 1119 (9th Cir. 2016).................................................................................4

Great Lakes Dredge & Dock Co. v. Huffman
  319 U.S. 293 (1943) ................................................................................................4

Hibbs v. Winn
  542 U.S. 88 (2004) ..................................................................................................4

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Hyatt v. Yee*
   871 F.3d 1067 (9th Cir. 2017)..........................................................................4, 7

*Jerron West, Inc. v. State of Cal. State Bd. of Equalization*
   129 F.3d 1334 (9th Cir. 1997)...........................................................................4, 7

*Kemerer v. Hilliard*
   No. 2:18-CV-374, 2018 WL 3448153 (W.D. Pa. July 17, 2018) ..............................10

*Levin v. Commerce Energy, Inc.*
   560 U.S. 413 (2010) ..............................................................................................10

*Maganini v. Quinn*
   99 Cal. App. 2d 1 (1950) ........................................................................................5

*Mason v. Cmty. Unit Sch. Dist. No. 428*
   No. 17 C 50307, 2019 WL 4201563 (N.D. Ill. Sept. 5, 2019).................................5

*Nat'l Geographic Soc. v. Cal. Bd. of Equalization*
   430 U.S. 551 (1977) ...............................................................................................8

*Retirement Fund Trust of the Plumbing, Etc. v. Franchise Tax Board*
   909 F.2d 1266 (9th Cir. 1990)................................................................................8

*Rosewell v. LaSalle Nat'l Bank*
   450 U.S. 503 (1981) ............................................................................................4, 9

*Sipple v. City of Hayward*
   225 Cal. App. 4th 349 (2014)..................................................................................6

*Thorp v. District of Columbia*
   317 F. Supp. 3d 74 (D.D.C. 2018) .......................................................................10

*TracFone Wireless, Inc. v. Cty. of Los Angeles*
   163 Cal. App. 4th 1359 (2008)................................................................................6

*Tully v. Griffin, Inc.*
   429 U.S. 68 (1976) .................................................................................................4

**FEDERAL STATUTES**

28 U.S.C. § 1341 (Tax Injunction Act)................................................... 1, 2, 3, 4, 5, 8, 9, 10

47 U.S.C. § 151 Note (Internet Tax Freedom Act) ...........................................................9

# TABLE OF AUTHORITIES
## (continued)

Page

**FEDERAL COURT RULES**

Fed. R. Civ. P. 12 .................................................................................................... 3

**CALIFORNIA STATUTES**

Cal. Rev. & Tax. Code
  § 6066-6077 ...................................................................................................... 5
  § 6226 ................................................................................................................ 5
  §§ 6451-6459 .................................................................................................... 5
  § 6901 ............................................................................................................ 5, 7
  § 6902 ........................................................................................................ 5, 6, 7
  §§ 6931-6933 ................................................................................................. 5, 7

Cal. Stat. 1992, ch. 902, § 6 ..................................................................................... 6

**CALIFORNIA REGULATIONS**

Cal. Code Regs, tit. 18
  § 1699 ................................................................................................................ 5
  §§ 35000-35067 ............................................................................................. 5, 7

# INTRODUCTION

This is a case about whether merchants who use the Fulfilled By Amazon (FBA) program to sell goods to California residents should have to remit sales and use tax for certain of their California sales. Despite plaintiff Online Merchants Guild's efforts to focus its opposition brief on the state's registration, reporting, and notice procedures, plaintiff's complaint asks this Court to order the California Department of Tax and Fee Administration (Department) to stop assessing and collecting sales and use tax in certain circumstances. Congress and the Supreme Court have, through the Tax Injunction Act and judicial principle of comity, directed that cases like this one may only be brought in state court. Those doctrines divest this Court of subject-matter jurisdiction.

The Tax Injunction Act bars this action because plaintiff seeks to stop the assessment and collection of taxes from FBA merchants who have a plain, speedy, and efficient means of challenging those taxes in state court. The Supreme Court has held that California's statutory tax refund action is plain, speedy, efficient, and consistent with the intent of Congress when it enacted the Tax Injunction Act. The principle of comity is broader, and divests the Court of jurisdiction whenever a federal case might risk disrupting state tax administration. Those doctrines limit tax challenges like this one to state court. The Court should therefore grant this motion to dismiss.

# ARGUMENT

## I. THE COMPLAINT IS BARRED BY THE TAX INJUNCTION ACT

### A. The Complaint Falls Within the Scope of the Tax Injunction Act

Plaintiff's complaint puts this case squarely within the ambit of the Tax Injunction Act. The complaint calls for this court to order the Department to stop assessing and collecting certain taxes from FBA merchants. Plaintiff alleges:

- The "challenged policy" is the Department's requirement that non-resident Guild members "collect and pay" sales and use tax if they have inventory in an Amazon fulfillment center in California. (Docket No. 1 ¶¶ 37-39.)

1

- The Department has imposed registration and recordkeeping requirements "[i]n addition to demanding taxes." (*Id.* ¶ 42.)
- "By demanding and seizing under threat of criminal and civil punishment money from Guild members," the Department is violating the United States Constitution. (*Id.* ¶ 72.)
- The Department is violating federal law by "pursuing the Guild's members instead of Amazon for the sales taxes at issue." (*Id.* ¶¶ 83, 97.)
- The Department's "demand for back taxes" violates federal law. (*Id.* ¶¶ 84, 85.)
- The Department improperly "pursues non-resident Guild members" for their "alleged tax collection obligation." (*Id.* ¶ 102.)
- The Department is improperly imposing tax and registration requirements on out-of-state Guild members. (*Id.* ¶¶ 108-109.)
- The Department "is attempting to impose massive retroactive taxes." (*Id.* ¶ 113.)

Each cause of action states: "Injunctive and declaratory relief is necessary to remedy [the Department's] violations of law and vindicate the constitutional rights of the Guild and its members." (*Id.* ¶¶ 77, 81, 89, 95, 99, 104, 111, 116, 120, 125.)

The Tax Injunction Act states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. "Demanding," "pursuing," and "imposing" a tax are all synonymous with "assessing" a tax. (Docket No. 1 ¶¶ 42, 72, 83-85, 97, 102, 108-109, 113.) The complaint challenges the Department's policy of requiring FBA merchants to "collect" sales and use tax (*id.* ¶ 37) and alleges that it violates the Constitution (*id.* ¶ 39). "Seizing money" is synonymous with levying. (*Id.* ¶ 72.) Thus, plaintiff is asking this Court to enjoin the assessment, levy, and collection of California sales and use tax, and the complaint is therefore within the scope of the Tax Injunction Act. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 14 (2015) ("The question…is whether the relief to some degree stops 'assessment, levy or collection'").

Plaintiff attempts to recharacterize its claims as focusing on registration, reporting, and notice activities that are ancillary to the Department's assessment and collection of the sales and use tax. Plaintiff argues that *Brohl* allows the Court to enjoin those "information gathering" activities. Plaintiff has misread *Brohl*.

First, the complaint unambiguously attacks the assessment, levy, and collection of taxes as discussed above. Plaintiff seems to be focusing on the phrasing of its second proposed preliminary injunction (Docket No. 22-13), but defendant's Rule 12 motion relates to the complaint, not the proposed preliminary injunction. The relief requested in the complaint is far broader than the proposed preliminary injunction, and falls within the scope of the Tax Injunction Act under any reading of *Brohl*.

Even if the Court were to focus on the Department's registration, reporting, and notice activities, *Brohl* does not hold that all "information gathering" activities are outside the scope of the Tax Injunction Act. In *Brohl*, the state of Colorado sought to require noncollecting retailers to gather from, and provide information to, their customers and to report such information to the Colorado Department of Revenue, even though the customers, and *not* the retailer, were responsible for paying the tax. 575 U.S. at 4-6. This reporting requirement—imposed on businesses that were not required to collect or remit the tax—was too attenuated from the state's assessment and collection procedures to fall under the scope of the Tax Injunction Act. *Id.* at 11-12. Justice Ginsburg explained in a concurrence that *Brohl* did not reach the question of whether reporting requirements imposed on the person or business who is required to pay the tax would fall outside the scope of the Tax Injunction Act.

> The Direct Marketing Association is not challenging its own or anyone else's tax liability or tax collection responsibilities. And the claim is not one likely to be pursued in a state refund action. A different question would be posed, however, by a suit to enjoin reporting obligations imposed on a taxpayer or tax collector, e.g., an employer or an in-state retailer, litigation in lieu of a direct challenge to an "assessment," "levy," or "collection." The Court does not reach today the question whether the claims in such a suit, i.e., claims suitable for a refund action, are barred by the Tax Injunction Act.

575 U.S. at 19 (Ginsburg, J., concurring).

Plaintiff's argument is based on the premise that *Brohl* abruptly reversed decades of Supreme Court and Ninth Circuit decisions that have applied a broad interpretation to the Tax Injunction Act in cases where the challenged activity directly involved the person or business that was required to pay the tax. *E.g.*, *Hibbs v. Winn*, 542 U.S. 88, 104 (2004) (the Tax Injunction Act applies if the requested relief would "reduce the flow of state tax revenue"); *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982) ("Congress' intent in enacting the Tax Injunction Act was to prevent federal-court interference with the assessment and collection of state taxes"); *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 521 (1981) (the Act "was first and foremost a vehicle to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes"); *Tully v. Griffin, Inc.*, 429 U.S. 68, 73 (1976) ("Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation") (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 298 (1943)); *Jerron West, Inc. v. State of Cal. State Bd. of Equalization*, 129 F.3d 1334, 1337 (9th Cir. 1997) ("[b]ased on a plain reading of the statute, the district court does not have jurisdiction over the Taxpayers' action if it seeks district court interference with California's tax assessment and collection process"); *Dillon v. State of Mont.*, 634 F.2d 463, 466 (9th Cir. 1980) (the Act "is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems"). Had the Court intended to suddenly change course, it would have articulated as much, but it did not. Indeed, decisions after *Brohl* continue to follow the traditional principle that a litigant "cannot challenge the administration of state tax law in federal court." *Hyatt v. Yee*, 871 F.3d 1067, 1073 (9th Cir. 2017); *see also id.* at 1072 (the Tax Injunction Act is a "broad jurisdictional barrier") (quoting *Arkansas v. Farm Credit Servs. of Cent. Ark.*, 520 U.S. 821, 823 (1997)); *Fredrickson v. Starbucks Corp.*, 840 F.3d 1119 (9th Cir. 2016) ("Congress has sharply curtailed the authority of federal courts to issue declaratory or injunctive relief that impedes the administration of state tax laws.").

*Brohl* was not a sea change in how courts should read the Tax Injunction Act. *Brohl* was a reminder that courts must focus on the text of the Tax Injunction Act, and that only relief that would restrain (i.e., "to some degree stop") the "assessment, levy, or collection" of a state tax falls within the scope of the Act. 575 U.S. at 14. Here, halting the registration and reporting of sales and use tax will effectively stop the assessment and collection of the tax. California's sales and use tax is a self-assessed tax. *Maganini v. Quinn*, 99 Cal. App. 2d 1, 3 (1950). The act of submitting a tax return that reports gross receipts and the amount of tax owed *is* the act of assessment. Cal. Rev. & Tax Code §§ 6451-6459. The tax must be paid at the time the tax return is submitted, so the reporting requirement is effectively also a collection requirement. *Id.* Retailers generally must register and obtain a seller's permit or use tax permit before filing tax returns, and must include their permit number on their returns. Cal. Rev. & Tax. Code §§ 6066-6077, 6226; Cal. Code Regs, tit. 18, § 1699. The Department uses those permit numbers to identify taxpayers, conduct audits, and credit payments. Registration is therefore an essential step in the process. If this Court enjoins the registration and reporting requirements for a set of businesses, the effect will be to stop the Department from assessing and collecting sales and use tax from those businesses. This action is therefore barred by the Tax Injunction Act. *Mason v. Cmty. Unit Sch. Dist. No. 428*, No. 17 C 50307, 2019 WL 4201563, at *7 (N.D. Ill. Sept. 5, 2019) (although framed as an injunction relating to "information gathering," requested relief was barred because plaintiffs sought an order that would help them to avoid paying local taxes).

### B.   California's Tax Refund Remedy Is Plain, Speedy, Efficient, and Available to Any Retailer that Remits Sales and Use Tax

Any retailer that is required to submit California sales and use tax returns may, after remitting the tax and exhausting administrative remedies, file a tax refund action in a California court. Cal. Rev. & Tax. Code § 6902; *see also* §§ 6901, 6931-6933; Cal. Code Regs. tit. 18, §§ 35000-35067. Plaintiff attempts to manufacture a "muddle" where there is none. (Docket No. 27 at pp. 5-9.) The cases plaintiff relies on do not establish

1 | any uncertainty as to whether plaintiff's members may seek tax refunds.

2 | One of the cases in plaintiff's brief confirms that plaintiff's members can seek refunds after paying their assessments because "it is not the appellation 'taxpayer' that controls, but the act of having paid the tax" that grants standing. *TracFone Wireless, Inc. v. Cty. of Los Angeles*, 163 Cal. App. 4th 1359, 1367 (2008) (discussing *Chrysler Credit Corp. v. Ostly*, 42 Cal. App. 3d 663, 676 (1974)). Although *Chrysler Credit* predates *Direct Marketing Association v. Bennett*, 916 F.2d 1451 (9th Cir. 1990), *Bennet* held that the word "taxpayer" in California Revenue and Taxation Code section 6902 created some uncertainty. *Bennett* at 1454. After *Bennett*, the California Legislature amended section 6902 to eliminate the word "taxpayer," thereby ensuring that the statute aligned with the *Chrysler Credit* rule that the act of paying the tax grants standing to seek a refund. Cal. Stat. 1992, ch. 902, § 6. Thus, *TracFone* held that a retailer that paid out of its own funds the use taxes its customers owed had standing to sue for refund. *TracFone* at p. 1365-1366. No uncertainty remains on this issue.

The other doctrines raised in the cases cited by plaintiff are inapplicable. *Sipple v. City of Hayward*, 225 Cal. App. 4th 349 (2014) focuses on the requirement that a retailer who originally collected sales tax reimbursement from its customers may not retain any tax refund: it must return the money to its customers. Originally established by *Decorative Carpets, Inc. v. State Bd. of Equalization*, 58 Cal. 2d 252 (1962), this doctrine ensures that a retailer is not unjustly enriched by a tax refund. The *Decorative Carpets/Sipple* rule is not implicated here because plaintiff's FBA merchant members have not collected sales tax reimbursement from their customers. Another rule referenced by plaintiff, the voluntary payment doctrine, does not apply where a business considers tax payments to be "necessary," for example if there may be serious consequences for nonpayment. *TracFone*, 163 Cal. App. 4th at p. 1368. In this case, plaintiff contends the Department has "demanded" that its members pay the tax and threatened serious consequences if they do not. (Docket No. 1 at ¶¶ 45, 72.)

There is therefore no doubt that plaintiff's members may utilize California's tax

6

refund remedy—a remedy that has been deemed adequate by the Supreme Court and Ninth Circuit. *Grace Brethren Church*, 457 U.S. at 413-417; *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 338 (1989); *Hyatt*, 871 F.3d at 1074, 1074 n.34; *Jerron West*, 129 F.3d at 1339; *Capitol Indus.-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1113-14 (9th Cir. 1982). Plaintiff contends that its members "who have not yet received—but fear—use tax assessments" cannot seek preemptive relief in California's courts (Docket No. 27 at p. 6), but they may use California's tax refund remedy to the same extent as any other retailer. They need only register (if they have not already done so), file a tax return reporting their sales for the appropriate time period, pay the tax at the posted rates, and then submit an administrative claim for refund with the Department. Cal. Rev. & Tax. Code §§ 6901, 6902, 6931-6933; Cal. Code Regs. tit. 18, §§ 35000-35067. They may then file a suit for refund after the Department acts on their refund claim or, after six months if the Department has not acted by then. *Id. Bennet* suggested that retailers who had not received a formal tax assessment could not initiate refund suits, but the amendment to section 6902 that eliminated the word "taxpayer" also resolved that issue.

Plaintiff argues that, as a trade association, it has a special right to obtain relief in federal court that its members lack, but that is not the law. Contrary to plaintiff's argument, *Bennett* never held that the Direct Marketing Association had standing *because* it was an association. *Bennett* focused on whether California offered a plain, speedy, and efficient remedy for the retailers who paid the tax. *Bennett* at 1454-1457. Plaintiff cites page 1455 of the *Bennett* opinion, which includes a sentence that does not make logical sense and appears to include an error: "[Direct Marketing Association's] concern that its status as a non-taxpayer renders precarious *its right to seek a tax refund* finds ample support in other cases." *Bennett* at 1455 (emphasis added). Direct Marketing Association never sought a tax refund. *Id.* at 1453. It sought injunctive and declaratory relief, *id.*, and it argued that *its members'* status as non-taxpayers rendered precarious *their* right to seek tax refunds, *id.* at 1454-1455. Elsewhere in the opinion, the *Bennett* court focuses only on whether Direct Marketing Association's *members* could obtain

7

refund relief, not whether the association could seek a refund in its own right. *Id.* at 1457 (Direct Marketing Association "also argues that the state remedy is not available to its members because the Board has not yet issued a determination").

*Retirement Fund Trust of the Plumbing, Etc. v. Franchise Tax Board*, 909 F.2d 1266 (9th Cir. 1990) is distinguishable because the trusts that lacked a remedy under California law were themselves taxpayers with respect to payroll taxes, and they bore a fiduciary relationship to their beneficiaries that independently entitled them to a judicial forum with respect to income taxes. *Id.* at 1272. Plaintiff does not share those characteristics, so there is no reason to conclude that plaintiff has an independent right to a judicial forum. This case is therefore governed by *Alcan Aluminum*, where the Supreme Court focused on the question of whether the business that paid the tax had an adequate state court remedy. 493 U.S. 331. Since it did, the Tax Injunction Act divested the federal court of jurisdiction over an action brought by that business or by a third party—in that instance the parent corporation of the business that was required to pay the tax. *Id.* at 338. *Alcan Aluminum* stands for the principle that the existence of an adequate state remedy for the business required to pay the tax divests the federal courts of jurisdiction. *Id.*

Plaintiff questions whether the California use tax counts as a "tax" when the retailer pays its customers' taxes out of its own funds. (Docket No. 17 at p. 9.) The Supreme Court has stated that California law "makes the retailer liable to the State for any taxes required to be collected regardless of whether he collects the tax." *Nat'l Geographic Soc. v. Cal. Bd. of Equalization*, 430 U.S. 551, 553 (1977). Even the case plaintiff relies upon, *Bank of America v. State Bd. of Equalization*, confirms that the retailer is acting as a tax collector when the retailer pays its customers' use taxes. 209 Cal. App. 2d 780, 799 (1962). Therefore, any federal court order that would allow a retailer to avoid its obligation to remit use taxes to the state would restrain the collection of state taxes, and is barred by the Tax Injunction Act.

### C. Congress Did Not Create an Exception to the Tax Injunction Act for the Internet Tax Freedom Act

Plaintiff's Internet Tax Freedom Act argument begins by assuming the premise that the Internet Tax Freedom Act cannot be effectuated without a private right of action for federal court injunctions. Plaintiff offers no support for this assumption. The Supreme Court has rejected a similar argument with respect to the First Amendment. *Grace Brethren Church*, 457 U.S. at 415 (argument that injunctive relief is necessary because constitutional rights might otherwise be violated before plaintiffs can challenge the state tax scheme was "unpersuasive"). The Court explained that "Congress was well aware that refund procedures were the sole remedy in many States for unlawfully collected taxes" when it passed the Tax Injunction Act in 1937. *Id.* at 416-417. "Carving out a special exception for taxpayers raising First Amendment claims would undermine significantly Congress' primary purpose 'to limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes.'" *Id.* (quoting *Rosewell*, 450 U.S. at 522). The Court also has not carved out a special exception for the equal protection and due process clauses of the Fourteenth Amendment. *Rosewell* at 514-515. There is no reason to elevate the Internet Tax Freedom Act above these fundamental constitutional rights.

The Internet Tax Freedom Act does not include an express exception to the Tax Injunction Act. Plaintiff identifies nothing in its legislative history that suggests that Congress intended any such exception. Plaintiff identifies no court cases in its twenty-two-year history that suggest any such intent by Congress. There is simply no support for "[c]arving out a special exception" for the Internet Tax Freedom Act. *Grace Brethren Church*, 457 U.S. at 416-417. Plaintiff's members may raise their Internet Tax Freedom Act arguments in refund claims in the courts of California.

## II. THE COMPLAINT IS BARRED BY THE PRINCIPLE OF COMITY

Comity is broader and "more embracive" than the Tax Injunction Act, and applies to any claim that would "risk disrupting state tax administration" as long as an adequate

remedy is available in state court. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417, 425-426 (2010). California's tax refund remedy is adequate as discussed in section I.B above. Plaintiff alleges, without any explication, that the three considerations identified on pages 431-432 of *Levin* are not present here. But this case (1) involves commercial matters (such as whether Amazon.com is a consignment store) that do not implicate fundamental rights or classifications that attract strict scrutiny, (2) plaintiff seeks to gain for its members the commercial advantage of not having to remit sales and use taxes that California-based retailers must pay, and (3) California courts are more familiar with California legislative preferences and the state's tax practices and procedures, and better positioned than federal courts to issue any necessary remedial orders. *Id.*

Comity is not an optional abstention doctrine: it is essential to maintaining the proper relationship between co-sovereigns in our federal system. *Fair Assessment in Real Est. Ass'n, Inc. v. McNary*, 454 U.S. 100, 103 (1981). It represents an independent ground for dismissing this case. *Levin*, 560 U.S. at 432; *Thorp v. District of Columbia*, 317 F. Supp. 3d 74, 82 (D.D.C. 2018), aff'd, No. 18-7112, 2018 WL 6720512 (D.C. Cir. Dec. 18, 2018) (although a tax summons procedure "may not invoke the jurisdictional bar of the [Tax Injunction Act], resolving this case would require this Court to delve into sensitive matters of state tax law"); *Kemerer v. Hilliard*, No. 2:18-CV-374, 2018 WL 3448153, at *4 (W.D. Pa. July 17, 2018) (challenged audit procedures were "information gathering" outside scope of the Tax Injunction Act, but suit was nevertheless barred by comity).

### III. THE COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

This court lacks subject-matter jurisdiction over plaintiff's claims. The complaint cannot be rewritten to cure its defects, and plaintiff has not requested leave to amend. The court should therefore dismiss with prejudice, and without leave to amend.

### CONCLUSION

Defendant respectfully requests that the Court grant his motion and dismiss the complaint without leave to amend.

Dated: April 14, 2021

Respectfully Submitted,

MATTHEW RODRIQUEZ
Acting Attorney General of California
MOLLY K. MOSLEY
Supervising Deputy Attorney General

*/s/ Michael Sapoznikow*
MICHAEL SAPOZNIKOW
GINA TOMASELLI
Deputy Attorney General
*Attorneys for Defendant Nicolas Maduros, Director, California Department of Tax & Fee Administration*

SA2020304014/35006224.docx

## CERTIFICATE OF SERVICE

| Case Name: | **Online Merchants Guild v. Maduros** | No. | **2:20-cv-01952-MCE-DB** |
|---|---|---|---|

I hereby certify that on <u>April 14, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 14, 2021</u>, at Sacramento, California.

|   K. Vitalie   |   */s/ K. Vitalie*   |
|---|---|
| Declarant | Signature |

SA2020304014
35009834.docx